GEORGE BURKE ET AL. V. UTAH NATIONAL BANK OF OGDEN.

FILED FEBRUARY 18, 1896.   No. 5933.

1. Estoppel in Pais.  To constitute an estoppel *in pais* the person sought to be estopped must have conducted himself with the intention of influencing the conduct of another, or with reason to believe his conduct would influence the other's conduct, inconsistently with the evidence he proposes to give.

2. ———: COMMISSION MERCHANTS: DRAFTS: ACCEPTANCE. B. & F., live stock commission merchants at South Omaha, wrote to the U. Bank a letter saying: "We will pay H. & M.'s drafts until further notice for the cost or value of stock shipped to us here with or without bill of

lading attached." *Held*, That B. & F. thereby obligated themselves to accept drafts made in pursuance of such letter of credit, provided they were in fact for the cost or value of stock then shipped; the bank in discounting drafts taking the risk of that fact, but the risk being transferred to B. & F. upon their acceptance of the drafts.

3. ——: ——: ——: ——. Under the letter of credit above quoted, a draft was drawn October 23, and accepted October 29. On October 29 a large shipment of stock was made. November 8 another draft was drawn not covered by stock shipped, unless the shipment of October 29 should be applied thereto. There was no evidence that the bank in receiving the last draft relied on the acceptance of the former as not including the shipment of October 29. *Held*, That under the circumstances B. & F., in defense of an action based on their refusal to accept the last draft, were not estopped from showing that the earlier draft had been covered in part by the shipment of October 29, the day of its acceptance.

4. ——: ——: ——: ——: INSTRUCTIONS. An instruction under such circumstances, to the effect that the bank had a right to rely from the acceptance of the earlier draft upon the fact that stock to cover it had been shipped prior to the date of its acceptance, and that B. & F. could not apply the shipment made on that day to its payment, was erroneous.

5. ——: ——: ——: ——. The estoppel contended for would not arise beyond forbidding B. & F. to apply to the payment of the earlier draft shipments of stock of which they could not reasonably have known at the time of accepting such draft.

ERROR from the district court of Douglas county.   Tried below before HOPEWELL, J.

*Hall & McCulloch* and *Schomp & Corson*, for plaintiffs in error.

*Isaac E. Congdon* and *Joseph R. Clarkson*, contra.

IRVINE, C.

In 1888 one Hall and one Moore, partners under the name of Hall & Moore, and engaged, or intend-

ing to engage, in the business of purchasing live stock in the then territory of Utah, and shipping the same to market, opened negotiations with the Utah National Bank with a view to transacting business with that institution.  At Hall & Moore's request a letter was written to the South Omaha National Bank inquiring as to the standing of George Burke & Frazier, a firm engaged in the live stock commission business at South Omaha, with which Hall & Moore contemplated transacting their business.  This letter was referred by the South Omaha National Bank to George Burke & Frazier, and in response thereto a letter dated August 4, 1888, was addressed to the Utah National Bank by George Burke & Frazier.  The letter began as follows: "The cashier of the South Omaha National Bank referred your letter to us to-day, in regard to paying Messrs. Hall & Moore's drafts.  In reply would say we will pay Messrs. Hall & Moore's drafts till further notice for the cost or value of stock shipped to us here with or without bill of lading attached."  The remainder of the letter is not material to the decision of the case.  This letter was received by the Utah National Bank August 8, and on that day its cashier addressed to George Burke & Frazier the following: "Your favor 4th inst. has been received.  We will advance Messrs. Hall & Moore such moneys as they may want to draw for on you, which is from what I can from Mr. Hall, for the cost of the cattle here.  I will cheerfully reply to any who may ask regards to your standing, etc.  I have been in cattle myself and will as far as I can look and see what kind and how many cattle Mr. Hall will ship next week."  On that day the Utah bank discounted a draft of Hall & Moore on

George Burke & Frazier for $1,330, dated August 7; and from that time until October 23 continued to receive from Hall & Moore drafts in various amounts on George Burke & Frazier, all of which were paid. In this way something over $50,000 was drawn and paid. On October 23 a draft was drawn for $9,000, which was accepted October 29 and paid November 1. November 8 a draft was drawn for $16,000, which was in due course presented and acceptance refused. There was thereafter paid thereon about $7,000, and this action was brought by the Utah bank against George Burke & Frazier to recover the remainder, of about $9,000. There was a verdict and judgment for the plaintiff for $7,746.66, and the defendants prosecute error.

The assignments of error are quite numerous. We are practically precluded from an examination of those relating to instructions given by the court of its own motion, because in the motion for a new trial the assignment relating thereto is directed against all the instructions given *en masse*. Many of them are manifestly free from error, and the others cannot therefore be considered. A similar obstacle presents itself to assignments of error relating to the refusal of instructions requested by the defendants. Complaint is, however, made of the giving of the twelfth and fourteenth instructions requested by the plaintiff, and as in our opinion they were both erroneous, the assignment of the two together in the motion for a new trial was sufficient. As the judgment must be reversed because of error in these instructions, we will not consider the other assignments, which relate to rulings upon the evidence, as the questions thereby presented may not recur.

In addition to the facts already stated, it appeared that from October 29 to November 8 there had been drawn checks by Hall & Moore upon the Utah bank which resulted in an overdraft on November 8 to the amount of $15,549.94. The $16,-000 draft was then drawn, but its amount not placed to the credit of Hall & Moore, although after November 8 several other small checks were paid. The evidence was very meager, but possibly sufficient to show that after the drawing of the $9,000 draft on October 23 there was shipped by Hall & Moore to the defendants live stock to the value of $16,000 and upwards; but in order to reach this result we must include in these shipments a large shipment made October 29, the day the $9,000 draft was accepted. The plaintiff proceeded upon the theory that the acceptance of a draft by the defendants estopped them from asserting that there had not at that time been shipped live stock to meet it; and in accordance with that theory the instructions complained of were given as follows:

"12. You are instructed that when defendants had accepted and paid the $9,000 draft drawn on October 23, 1888, that plaintiff had the right to presume and rely upon the fact that stock had been shipped prior to the date of such acceptance and payment sufficient to cover the draft, and were warranted in making the advances to Hall & Moore for the purchase of stock to be shipped thereafter to the defendants, and defendants, as against the plaintiff, had no right to apply the proceeds of such future shipments to the payment of said $9,000 draft."

"14. If you find from the evidence that stock to the cost or value of the $16,000 draft was shipped

on and after the date of the acceptance of the
$9,000 draft by the defendants, then you are in-
structed that it is immaterial what the condition
of the defendants' account was with Hall."

Now we construe the contract, so far as is ma-
terial to these instructions, as follows: By the let-
ter of credit of August 4 the defendants obligated
themselves to the plaintiff to accept drafts of Hall
& Moore for the cost or value of stock shipped to
South Omaha by Hall & Moore. The phrase "with
or without bill of lading attached" extended their
obligation this far: that no duty was imposed
upon the plaintiff to insist that bills of lading
should be attached to the drafts, and that, there-
fore, if a draft should be drawn without bill of
lading, the defendants were bound to accept it,
provided it was for the cost or value of stock then
shipped to the defendants; that is, that in accept-
ing a draft the defendants assumed the risk of
their receiving the stock to cover it. It was a con-
dition of the letter that drafts should only be ac-
cepted to cover the cost or value of the stock
shipped; and the bank in discounting drafts took
the risk of their being within the terms of the let-
ter of credit. We think, therefore, there was a
substantial ground for the general application of
a doctrine of estoppel based on the acceptance of
the drafts; but we do not think that the instruc-
tions given stated the true rule. We realize the
force of what was said in *Campbell v. Nesbitt*, 7
Neb., 300, that in regard to estoppels *in pais* "there
can be no fixed and settled rules of general appli-
cation to regulate them, as in technical estoppels;
that in many, and probably most instances,
whether the act or admission shall operate by way
of estoppel or not, must depend upon the circum-

stances of each case." Still there are some general rules applicable to the doctrine of equitable estoppel. Under the circumstances of this case we would not go so far as to hold, as many courts have done, and probably correctly under the facts before them, that there must be some misrepresentation or concealment of facts known to one party and not known to the other. On the contrary, we think the following statement by the supreme court of Dakota (*Parliman v. Young*, 2 Dak., 175) is correct and applicable to such transactions as the present: "To establish an estoppel *in pais* it must be shown: first, that the person sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposed to give, or the title he proposed to set up; second, that the other party has acted upon or has been influenced by such act; third, that the party will be prejudiced by allowing the truth of the admission to be proved." But it is also true, as said in that case, that "Estoppels must be certain to every intent; for no one shall be denied setting up the truth, unless it is in plain and clear contradiction to his former acts." We take it that to constitute an estoppel *in pais* the conduct of the party estopped must have been such as to warrant the other party in acting on the belief that the facts were as indicated by such conduct,—that he must so have believed and acted. Now the fourteenth instruction was to the effect that if stock to the cost or value of $16,000 was shipped on and after the date of the acceptance of the $9,000 draft, then the condition of defendants' account with Hall & Moore was

immaterial. In view of the evidence this meant and could only mean that the acceptance of the $9,000 draft estopped the defendants from asserting that stock to its full amount had not been shipped before the day it was accepted. As we have said, a large shipment of stock was made the very day of its acceptance, and the plaintiff could only recover under the terms of the letter of credit and the evidence by calculating the value of the shipment of October 29 as a portion of the sum for which the $16,000 draft was drawn. This the instruction in effect required should be done, although the fact might be otherwise. It was not necessary for the plaintiff to go back to the beginning of the transaction and prove that the aggregate cost or value of the stock shipped was equal to the aggregate of the drafts made. Where a draft was accepted the plaintiff had a right to presume that the defendants found that it had been drawn in accordance with the letter of credit, and that stock to the cost or value of its amount had then been shipped; but the plaintiff had no right to presume that acceptances were given based solely on shipments made prior to the day of the acceptance. In accepting a draft the defendants did not give the plaintiff to understand anything more than that stock in value equal to the amount of the draft had at the time of the acceptance been shipped. These are days of the electric telegraph, and on the presentation of a draft for $9,000 on October 29 the defendants might accept it on the faith of information in their possession that stock had that very day been shipped to cover it. We do not say that there is evidence to support this view; but we are not dealing with the actual facts; we are

merely considering what the defendants' con-
duct gave the plaintiff a right to rely on.
The shipment of October 29 might have been,
so far as the evidence discloses, before the
$9,000 draft was accepted. The plaintiff was
bound to know that this might be so. It had
no right in making future advances to presume
that it was not so; and more than that, the evi-
dence fails to show that in making such advances
the plaintiff relied on the acceptance of the $9,000
draft, as showing that the shipment of October 29
was not yet drawn against. The estoppel con-
tended for, therefore, could not arise beyond for-
bidding the defendants to apply to the payment
of earlier drafts shipments of stock of which they
could not reasonably have known at the time of
the acceptance of such drafts, and the instruction
was erroneous in that it held the defendants
estopped from proving the application to the pay-
ment of the $9,000 draft the shipment of stock
made the day of its acceptance. The twelfth in-
struction is similar in its effect to the fourteenth,
except that its language leaves it uncertain
whether the acceptance or the payment of the
$9,000 draft created the estoppel. Now the obli-
gations of the defendants were fixed by accept-
ance, and payment after acceptance and in pursu-
ance of that obligation—at least where the paper
was, or was supposed to be, in the hands of a
holder for value—created no new estoppel. Aside
from the injection of this element, and the uncer-
tainty created thereby, the instruction is open to
the same objections as the fourteenth.

REVERSED AND REMANDED.