HOWELLS STATE BANK, APPELLANT, V. ESTATE OF GEORGE
E. MULLER, APPELLEE.

FILED FEBRUARY 17, 1925.    No. 22964.

Banks and Banking:   ESTOPPEL.   Upon the death of M., his brother
    acting with the acquiesence of M.'s widow, went to the bank,
    which was the largest. creditor of the deceased, for advice.
    The president of the bank, professing knowledge of the law and
    assuming to advise, directed summary collection of assets and
    payment of debts, which was immediately proceeded with by
    M.'s brother, who paid funeral expenses through an account
    opened in the bank for the purpose, and also a considerable num-
    ber of claims against the estate, including one preferred by the
    bank for overdraft.   Afterward, an administration having been
    begun in the county court, and the estate appearing insolvent, the
    bank complained of said payment of funeral expenses and
    claims, contending that they were unauthorized and illegal.
    *Held,* that the advice of the bank's president was in connection
    with the bank's business, and that the bank was thereby estopped
    to maintain its objections.

APPEAL from the district court for Colfax county: FRED-
ERICK W. BUTTON, JUDGE.   *Affirmed.*

*George W. Wertz* and *W. C. Hronek,* for appellant.

*John C. Sprecher, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD and
THOMPSON, JJ., and SHEPHERD, District Judge.

SHEPHERD, District Judge.

George E. Muller, who was farming on a comparatively
large scale in partnership with his brother Frank, died
November 19, 1919, leaving a girl wife and an infant
daughter, and leaving about $6,000 worth of personal prop-
erty, the major portion of which consisted of crops, live
stock and farm machinery held in conjunction with his said
brother.   His debts, together with funeral expense and
costs, amounted to a little more than this, as it finally
proved.

He had always depended upon the bank in his lifetime
and to the bank, which was also his largest creditor,

straightway went his brother Frank, with at least the passive acquiescence of the young widow, for advice and direction in regard to his estate. The president of the bank, who stated at this juncture that he was as good as a lawyer, does not seem to have considered the matter of an administration, but promptly advised his visitor to collect the assets, pay the debts, and so settle up the affairs of the deceased.

Frank proceeded accordingly. Funeral expense, five or six times as great as the law could prefer in the settlement of an insolvent estate, was incurred and paid. Labor was employed. Crops were gathered, divided and sold. Horses, cattle and and hogs were disposed of. Debts and claims were speedily paid without passing under the scrutiny of the court, among them a debt on overdraft to the appellant bank. Frank would deposit money collected in the bank in the name of the widow, and check it out on checks signed by himself thus: "Mrs. Geo. E. Muller, by Frank J. Muller." In all this he appears to have acted honestly and in good faith, with a regrettable lack of knowledge consequent upon poor legal advice. The widow charges him with no fault in the premises. And, though maintaining in her testimony that she did not authorize this checking and paying, or even know that it was being done, she frankly states that she attaches no blame to the bank or to its president, Mr. Quesner.

On or about the 29th day of December, 1919, perhaps a month and a half after the death of the decedent, the widow consulted a lawyer and applied for letters of administration. She was duly appointed on or about the 26th day of January, 1920. Only two claims were filed against the estate, one on behalf of Frank J. Muller in the sum of about $800 for a debt in connection with the partnership. This claim appears to have been preferred as a partnership debt and was subsequently duly allowed in the sum of $615.47. The other was a claim of the bank in the sum of $4,445, and was allowed by consent. About the 20th day of January, 1921, the court, upon petition of the bank

for a *pro rata* application of the funds in the hands of the administratrix, ordered a payment of $3,000 to the bank and a payment of $300 to Frank J. Muller. And a few days later the administratrix paid the remainder of the Muller claim in the sum of $315.47. Subsequently thereto, the bank asked for an accounting on the part of the administratrix, and she filed her final account, claiming credit for all payments made by Muller and herself under the advice of the president of the bank, showing some further payments by her on account of labor and funeral expense, and claiming fees as administratrix in the sum of $160.98, widow's statutory allowance in the sum of $200, and exemptions in the sum of $755. And though the bank made specific and vigorous objection to practically the whole of the account, and particularly to the funeral expenses, a settlement with Nick Muller in the sum of $75, the payment of the final $315.47 to Frank J. Muller, the claim of exemptions in the sum of $755 and the allowance of administratrix' fees in the sum of $160.98, the county court approved the account and settled the estate upon it. The account showed $6,097.69 collected and $6,391.80 paid out, leaving the sum of $294.11 due the estate, and the court entered a decree requiring the bank to repay to the estate this balance. The district court, upon appeal, sustained the findings and decree of the county court. An appeal followed to this court.

Though a considerable sum in the aggregate, including maintenance money during the settlement of the estate, fees of the administratrix, widow's statutory allowance, and exemptions, was allowed the widow, it would seem that the allowance was properly made. The appellant argues with some force that there could be no exemptions to the widow under the statute (Comp. St. 1922, sec. 1222) because the property selected was held in partnership at the time of the death of the decedent, and therefore could not be said to be exempt from execution or attachment. But it is probable that the provision of the statute referred to was simply to protect partnership property from a claim

of exemptions to the detriment of the partnership, and that
it was not the intention of the legislature to deprive the
widow of such exemptions after the property of the de-
ceased had been duly segregated from the partnership
holdings.

Be that as it may, the district court held with the
county court and approved the final account, on the theory
that the bank was estopped to maintain its objections,
though recognizing that the proceedings were highly irreg-
ular. We feel, upon examination of the case, that it was
justified in so doing. While the appellant insists that there
are no facts in the record sufficient to support a plea of
estoppel, it cites no authority to maintain its position.
True, the advice of its president, however hurtful and ex-
pensive it might be to the estate, could hardly be charged
to the bank if the latter had no interest in the premises.
But the bank was the largest creditor, and vitally inter-
ested. It received immediately from Frank payment of the
overdraft of the deceased, thus participating with many
other creditors in the benefits of the unauthorized paying
advised by its own chief officer. With full knowledge of all
the facts, except possibly that the estate was insolvent, it
paid the unauthorized check given by Frank J. Muller for
funeral expenses. The advice of its president became its
advice because of its interest and its action, and subjected
it to the doctrine of estoppel.

Our court said in *Campbell v. Nesbitt*, 7 Neb. 300: "Gen-
erally, whether acts or admissions of a party shall operate
by way of estoppel, or not, must depend upon the circum-
stances of each case, and therefore there can be no fixed
and settled rules of general application to regulate estoppel
*in pais*, as in technical estoppels." And in a later case,
*Burke v. Utah Nat. Bank*, 47 Neb. 247, it used this lan-
guage: "To constitute an estoppel *in pais* the person
sought to be estopped must have conducted himself with
the intention of influencing the conduct of another, or with
reason to believe his conduct would influence the other's
conduct, inconsistently with the evidence he proposes to

give." Though the facts in the case cited differ from those in the case at bar, the principle is clearly applicable. An appellant should not be permitted to advise the estate to pay claims without administration, and then contest the payment of said claim after an administration has been found necessary.

The judgment of the district court must accordingly be held to be upon sound ground, notwithstanding that otherwise the final account of the administratrix must have been disallowed on the authority of *Huebner v. Sesseman*, 38 Neb. 78, and a number of later cases approving the general rule therein stated.

AFFIRMED.