# FARMERS UNION OIL COMPANY v.
# TERRANCE FLADELAND.

178 N. W. (2d) 254.

June 12, 1970—No. 42505.

*Padden, Dickel & Johannson* and *Kenneth Johannson,* for appellant.

*Mortenson & McEwen* and *Neil McEwen,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

MURPHY, JUSTICE.

Appeal from a judgment for plaintiff holder in an action on a note. Defendant, a comaker, contends that he was released from liability by the holder's acceptance of a renewal note which defendant did not sign.

From the record it appears that John Fladeland sought a loan

in early 1961 from plaintiff, Farmers Union Oil Company (of Red Lake Falls, Minnesota). The application was denied, but plaintiff's agent suggested that the loan might be arranged if the applicant's brother, Terrance Fladeland, joined with him on the note. On February 3, 1961, the brothers, John and Terrance Fladeland, executed an application for a loan and a promissory note in the sum of $7,000, with interest at 6 1/2 percent, due on or before January 1, 1962. These documents were forwarded to Production Credit Association (P.C.A.) of Thief River Falls, Minnesota, pursuant to an agreement whereby P.C.A. accepted the note and plaintiff guaranteed it. The note was unpaid at maturity. John Fladeland negotiated an extension note from P.C.A., dated January 16, 1962, in which he promised to pay $7,305, the principal plus accumulated interest, with interest at 6 1/2 percent, due on or before June 1, 1962. The note, which was not signed by defendant, Terrance Fladeland, contained this provision: "On or before June 1, 1962 the undersigned jointly and severally promise to pay," beneath which was the following endorsement: "John & Terrance Fladeland, By /s/ John Fladeland." Possession of the original note was retained by the holder. The second note was also unpaid at maturity. Plaintiff was required to pay P.C.A. the sum of $8,373.80. In the meantime, John Fladeland had been adjudged a bankrupt and he was dismissed as a defendant in this action by Farmers Union Oil Company, leaving his brother, Terrance Fladeland, as the only defendant.

In his charge, the court instructed the jury that they must determine whether the execution of the second note merely extended the first note or canceled it entirely. They were instructed that if the second note canceled the original note, defendant was not liable. The court's charge apparently was predicated on Minn. St. 1961, § 335.45, which provided:

"A negotiable instrument is discharged:

"(1) By payment in due course by or on behalf of the principal debtor;

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"(3) By the intentional cancelation thereof by the holder;

"(4) By any other act which will discharge a simple contract for the payment of money;

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

Apparently, the trial court concluded either that the negotiation of the new note could be a novation, and therefore a discharge under § 335.45(4), or else an intentional cancellation under § 335.45(3). By special verdict, the jury found that the second note was not an extension or renewal of the first note and, in answer to the interrogatory as to whether the second note was a new note which canceled the first one, responded in the affirmative.

Plaintiff thereafter moved for judgment notwithstanding the verdict or a new trial. The motion for judgment notwithstanding was granted, the trial court being of the view that there could be no renunciation of the original indebtedness without consideration or without a renunciation of its rights by the holder in writing or delivery up of the original instrument to the comakers. The trial court was persuaded by the provisions of Minn. St. 1961, § 335.46, which recited:

"The holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. A renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

Defendant asserts that, because his signature does not appear on the new note, he is relieved of liability on the original, and supports this argument by reference to § 335.45(4), which pro-

vides that a negotiable instrument may be discharged "[b]y any other act which will discharge a simple contract for the payment of money." He also contends that the requirement contained in § 335.46 that "[a] renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon" is satisfied by the renewal note which, he argues, is itself a writing within the meaning of that provision. These arguments find support neither in the record nor in the authorities.

We find nothing in the evidence which would indicate that there was an intentional cancellation nor any other act which could possibly be encompassed within the scope of § 335.45(4) which would discharge defendant's liability. Both parties refer to McGlynn v. Granstrom, 169 Minn. 164, 210 N. W. 892, in which the origins and development of the quoted provisions of the Negotiable Instruments Law are discussed.[1] The thrust of that decision, so far as it is applicable to the facts before us, is that the requirement of the writing contained in § 335.46 may be dispensed with where there is evidence of consideration to support an oral contract of discharge. We think the trial court correctly conceived the application of McGlynn v. Granstrom, *supra*. In his memorandum, he stated:

"* * * The majority view seems to be that a gratuitous renunciation must be in writing or the instrument must be delivered to the maker. There is a discussion of this matter in 19 Minn. Law Review, P. 335, which is helpful and it would seem that the majority rule allows oral evidence of discharge if consideration for discharge or renunciation is shown. However both the majority and the minority views seem to hold that a gratuitous renunciation must be in writing."

The trial court further noted:

"The only evidence concerning the renunciation by P.C.A. of Terrance Fladeland's liability on the first note was offered by

---

[1] These provisions have now been incorporated in Minn. St. 336.1—107, 336.3—601, and 336.3—605 of the Uniform Commercial Code.

John Fladeland who testified that he had told Mr. Paul Roy, manager of the P.C.A. in Thief River Falls at the time the second note was signed, that he told Mr. Roy that he could just as well take Terrance Fladeland's name off the note and 'I thought Mr. Roy said it was okay.' John Fladeland also testified that he didn't believe that his brother Terrance Fladeland's name was on the application for renewal of the second note at the time John Fladeland signed it. However the provisions of the original note provided that the same could be extended without notice and the fact that one co-maker, John Fladeland, signed an application for extension and a second note would not in itself discharge the other co-maker, Terrance Fladeland."

It is generally held that the mere execution of a renewal note evidences the same debt by a new promise and does not constitute a payment or discharge of the original note but operates only as an extension of time for payment. Barsness v. Tiegen, 184 Minn. 188, 238 N. W. 161, 76 A. L. R. 1317; 11 Am. Jur. (2d) Bills and Notes, § 915. It is true that one note may be accepted in payment of another, but a new note given without any new consideration to the same person for the same sum as the old one is not generally deemed a satisfaction thereof, unless so received and accepted. Miller v. McCarty, 47 Minn. 321, 50 N. W. 235; State Bank of Isanti v. Mutual Tel. Co. 123 Minn. 314, 143 N. W. 912; Thysell v. Holm, 124 Minn. 541, 145 N. W. 164; Hagen v. First State Bank of Watson, 180 Minn. 113, 230 N. W. 267; Annotations, 52 A. L. R. 1416 and 65 A. L. R. (2d) 593, 601; 10 C. J. S., Bills and Notes, §§ 275, 279, 444. Here, the evidence falls short of establishing that there was any agreement, express or implied, that the renewal note would constitute a release of defendant's obligation on the original instrument.

We agree on the record that the trial court should have granted plaintiff's motion for a directed verdict in the first place and that its order for judgment notwithstanding the verdict was the correct disposition of the case.

Affirmed.