**In re the ESTATE OF: Leslie LARSON, Sr., Deceased.**

No. C8-84-594.

Court of Appeals of Minnesota.

Dec. 11, 1984.

John E. Mack, New London, for appellant.

Donald A. Wilcox, Benson, for respondent Swift County Bank.

Heard, considered and decided by LANSING, P.J. and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

A secured creditor filed a claim against an estate based on a note which decedent had signed. The trial court found that the failure of the estate to provide timely notice to the claimant bank of disallowance of the claim operated as an allowance of the claim. More significantly, the court found that the interests of justice required that the estate be held liable to the claimant bank; that the claim was a valid and existing claim; and that the personal representative should be required to pay the claim out of the estate. We affirm.

## FACTS

Decedent, Leslie Larson, Sr., was a dairy farmer. The debt underlying the claim at issue arose from a promissory note dated January 6, 1982, in the principal amount of $242,000, secured by a farm chattel mortgage.

Decedent died intestate on February 16, 1982, leaving his wife and thirteen grown children. Decedent's wife, Irene Larson, met with Norman Anderson, a representative of respondent bank, several times to discuss continuance of the dairy farm operation and the need to commence a proceeding to settle the estate. Anderson informed Larson of respondent's concern over payment of the debt. During these conversations both assumed that Larson acted as personal representative of the estate and not on her own behalf.

Subsequently, Larson signed several notes. On June 14, 1982, two notes in the amounts of $33,000 and $2,692.13 were prepared to cover the 1982 operating expenses and the crop hail insurance premium, respectively. On July 14, 1982, a renewal note in the amount of $296,137.16 was prepared and signed by Larson.

The published notice of the proceeding to administer the estate was dated August 18, 1982. Respondent filed its written statement of claim on September 2, 1982. The statement set forth a claim of $298,829.29, plus interest, and recited four notes executed up to that point, the original note of January 6, 1982, for $242,000, the June 14, 1982, notes for $33,000.00 and $2,692.13, and the renewal note of July 14, 1982, for $296,137.16.

A renewal note was executed by Larson on November 17, 1982, in the amount of $316,208, reciting on its face that it renewed the July 14, 1982, renewal note and the June 14, 1982, crop hail insurance premium note.

On June 23, 1983, Larson executed another renewal note in the amount of $301,941.42. The note recited on its face that it renewed the November 17, 1982, note. One further advance was made to the estate on June 23, 1983, in the amount of $898.00 for a crop hail insurance premium, and was evidenced by a separate note.

On September 12, 1983, respondent bank petitioned the court for an order directing the personal representative to pay its claim. The personal representative filed a notice of disallowance or partial disallowance of claim on November 1, 1983. A hearing was held on respondent's petition on January 4, 1984, and the court allowed

the claim in full and ordered that it be paid. The personal representative appealed.

## ISSUES

1. Whether the note upon which respondent's claim against the estate is based was paid or renewed by the June 23, 1984, note.

2. Whether a secured creditor may seek payment from an estate under Minn.Stat. § 524.3–806 (1982) when it has not first attempted to proceed against the security.

## ANALYSIS

Appellant estate argues that the claim which the bank presented was not valid, because the note upon which the claim is based was paid by the issuance of the June 23, 1983, note by respondent bank. Respondent bank contends that the June 23, 1983, note was merely a renewal of the original debt, did not operate as payment of the original debt, and has no effect on the validity of its claim.

■ The probate code empowers a personal representative to pay, renew or extend any obligation secured by an encumbrance. Minn.Stat. § 524.3–814 (1982).

■ The issue of whether a renewal note operates as a mere extension of time for payment or whether it constitutes a payment or discharge has been raised in many cases. The determination of the question depends upon the intention of the parties and the facts and circumstances surrounding the transaction. *First State Bank of Odessa v. First State Bank of Correll,* 165 Minn. 285, 206 N.W. 459 (1925). The burden of proof is upon the debtor to prove that the renewal was an absolute discharge of the original note. *State Bank of Isanti v. Mutual Telephone Co.,* 123 Minn. 314, 143 N.W. 912 (1913).

In the absence of evidence showing affirmatively that a renewal note was given and accepted for the purpose of discharging and extinguishing the original note, the law presumes that it was given and accepted as conditional payment only.

*Id.* at 317, 143 N.W. at 913.

■ On review, this court must examine the record to determine if the evidence as a whole sustains the trial court finding. If so, the trial court must be affirmed, even when evidence might provide a reasonable basis for inferences and findings to the contrary. *Don Kral Inc. v. Lindstrom,* 286 Minn. 37, 42, 173 N.W.2d 921, 924 (1970).

The trial court found that Larson dealt with the bank on behalf of the estate. Anderson, on behalf of the respondent bank, testified that there was never any intent on the part of himself or the bank to roll the debt out of the estate and on to Larson individually, that they retained the original debt and the original note signed by decedent, and that the 1983 note was merely an extension of the original debt. He also testified that each time a renewal note was executed, the note indicated on its face that it was to renew a prior note. Finally, the prior notes were stamped "Paid by Renewal".

Appellant argues that there was new consideration for the June 23, 1983, note, which demonstrates that it is a new note, rather than a renewal note. She cites *Farmers Union Oil Co. v. Fladeland,* 287 Minn. 315, 178 N.W.2d 254, (1970), where the supreme court said:

It is generally held that the mere execution of a renewal note evidences the same debt by a new promise and does not constitute a payment or discharge of the original note but operates only as an extension of time for payment. * * * It is true that one note may be accepted in payment of another, but a new note given without any new consideration to the same person for the same sum as the old one is not generally deemed a satisfaction thereof, unless so received and accepted. * * * Here, the evidence falls short of establishing that there was any agreement, express or implied, that the renewal note would constitute a release

of defendant's obligation on the original instrument.

*Id.* at 319, 178 N.W.2d at 257 (citations omitted).

■ Appellant contends that the new consideration for the June 23, 1983, note included the $898 which the bank lent for hail insurance, the two additional loans made on June 14, 1982, which were consolidated into the June 23, 1983, note, the fact that the June 23, 1983, note had a different interest rate than earlier notes, and the words "Paid by Renewal" which were stamped on prior notes. We disagree.

The $898 loan was evidenced by a separate note in that amount and bears no relation to the June 23, 1983, renewal debt. The $33,000 loan and the $2,692.13 loan were included in respondent bank's written statement of claim. Each time a renewal note was executed it included only those sums previously advanced and evidenced by prior notes plus accrued interest.

■ A change in the interest rate is merely a modification of the terms of the debt; it does not necessarily change the existence of the debt, but only the terms of repayment. This was implicitly addressed in *Holden v. Farwell, Ozmun, Kirk & Co.*, 223 Minn. 550, 27 N.W.2d 641 (1947), where the supreme court found that a series of renewals of an original note, which included changes in the interest rate, did not discharge the original debt.

■ Finally, the words "Paid by Renewal", stamped on prior notes, do not indicate discharge. *See Village of Farmington v. Reisinger*, 174 Minn. 56, 218 N.W. 444 (1928); *Munson v. Bensel*, 169 Minn. 434, 211 N.W. 838 (1927).

■ Appellant here did not meet its burden of proof to show that the June 23, 1983, renewal was an absolute discharge of the original note.

2. Appellant argues that a secured creditor must attempt to exhaust or sell the security before it may look to the estate assets for payment of its claims. It argues that the bank improperly sought payment of its secured claim from the assets of the estate, rather than proceeding against its security as it should have done. Respondent sought payment from the estate under Minn.Stat. § 524.3–806(b) (1982), which provides:

Upon the petition * * * of a claimant in a proceeding for the purpose, the court may allow in whole or in part any claim or claims presented to the personal representative or filed with the clerk of the court in due time and not barred by subsection (a) of this section.

Appellant argues that this section applies to general claims, and that respondent's secured claim is governed by Minn.Stat. § 524.3–809 (1982). It argues that if the secured claim is not handled correctly the creditor either loses its security, or, in the alternative, is limited to it.

Minn.Stat. § 524.3–804(1) (1982) provides the method for presentation of claims against a decedent's estate, and includes references to secured claims.

■ A secured creditor is treated differently than other creditors under the probate code. Minn.Stat. § 524.3–803(c) (1982), which governs limitations on presentation of claims, provides:

Nothing in this section affects or prevents:

(1) any proceeding to enforce any mortgage, pledge, or other lien upon property of the estate * * *.

Similarly, Minn.Stat. § 524.3–104 (1982), providing generally for claims against the estate, states:

This section has no application to a proceeding by a secured creditor of the decedent to enforce his right to his security except as to any deficiency judgment which might be sought therein.

The probate code permits the personal representative authority to pay a secured claim in three ways. The personal representative may pay the claim in whole or in part; renew or extend the secured obligation; or convey or transfer assets to the creditor in satisfaction of the lien, whether

or not the holder has filed a claim. Minn. Stat. § 524.3–814 (1982).

For the secured creditor who seeks payment, the code provides three options. Minn.Stat. § 524.3–809. First, payment is to be made upon the basis of the amount allowed if the creditor surrenders his security. Second, if the creditor exhausts its security before receiving payment upon the amount owing, it may receive its credit less the fair value of the security. Finally, if the creditor does not have the right to exhaust its security, or has not done so, it may receive the amount of the claim allowed less the value of the security. Minn. Stat. § 524.3–809 provides options for the secured creditor, but does not interfere with the process set out in Minn.Stat. § 524.3–806. The Minnesota Supreme Court has addressed this question. In *Browning v. Eiken*, 189 Minn. 375, 249 N.W. 573 (1933), the court reviewed allowance of an intermediate account, where the probate court approved the act of a bank in applying a part of a deposit account in payment of notes held by it against decedent. The court stated:

> The general rule is that a creditor holding securities has the option, after the debtor's death, to enforce his securities for payment of his claim or to file his claim as a general creditor of the estate.

*Id.* at 380, 249 N.W. at 575.

We are urged by appellant to consider that the issues here involve peril for the estate and the family of a decedent. The net effect of the claim, counsel asserts, "is to attempt to make land stand as security for a debt secured by personality." Nonetheless, we find no legal basis to obstruct a proper creditor's claim. The bank proceeded lawfully under the code; it is not required to proceed against its security, and it may make a claim against the estate along with the other creditors.

## DECISION

The evidence sustains the trial court finding that the subsequent note was a renewal note, and the secured creditor was not required to exhaust its security prior to filing a general claim with the estate.

Affirmed.