**In re the Marriage of Mary Jean STEW-ART, a/k/a Mary O. Stewart, Petitioner, Appellant,**

**v.**

**Frank Richard STEWART, Respondent.**

**No. C2–86–1485.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Robert Lewis Barrows, John W. Getsinger, Leonard, Street and Deinard, Minneapolis, for appellant.

Marybeth Dorn, Nancy A. Wiltgen, Pepin Dayton Herman Graham and Getts, P.A., Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from a post-decree order construing the parties' 1979 dissolution decree. The district court construed language in the decree to allow respondent, without appellant's consent, to renew notes secured by the parties' jointly-owned shares of stock. Appellant contends the decree does not permit renewals of the notes. She appeals from the district court's order construing the decree to permit renewals. We affirm.

## FACTS

The parties were divorced in 1979. During the marriage, respondent Frank Richard Stewart, Jr. took out several loans from the First National Bank of Stillwater and other banks. The loans were secured by 2900 shares of Merrill Lynch stock jointly owned by the parties. These loans matured in 1980.

The parties entered into a stipulation which was incorporated into the decree. By this stipulation, appellant Mary Jean Stewart received a contingent interest in one-half of the Merrill Lynch stock, subject to First National Bank's security interest. Dividends from the stock were to be applied to pay interest on the loans. If Frank defaults and the bank forecloses, Frank is not obligated to reimburse Mary Jean for her loss.

When the loans matured in 1980, Frank renewed them. He continued to renew them on an annual basis, pledging his interest in the Merrill Lynch stock. Frank continued to apply the dividends to the interest

due and to reduce the principal. While interest has generally exceeded the dividends, he has reduced the principal from $46,850 to $33,000.

In November 1984, on Mary Jean's motion, the court required Frank to furnish her a verified accounting record of all transactions involving the Merrill Lynch stock. He agreed to release 1500 shares of the stock to her; however, he was only able to release 950 shares. Mary Jean entered into an agreement with First National Bank that they would not renew the loans without her prior written consent.

In November 1985 Mary Jean brought a motion for construction of the decree and requested a distribution of the remainder of her shares of stock. She claimed the notes existing in 1985 were new debts, not the "existing debt" referred to in the judgment and decree. All of the notes are now overdue and Mary Jean refuses to consent to renewals.

## ISSUE

Did the trial court err by interpreting the phrase "existing loans" to include renewal loans?

## ANALYSIS

This case turns on interpretation of the stipulation incorporated in the dissolution decree. The interpretation of written documents is a question of law, and this court may examine the matter de novo. Vanderleest v. Vanderleest, 352 N.W.2d 54, 56 (Minn.Ct.App.1984).

Both parties, represented by counsel, stipulated to the following provisions:

8. The parties shall equally divide the 2,900 shares of Merrill-Lynch stock currently held as collateral for various loans at the First National Bank of Stillwater subject, however, to the right of First National Bank of Stillwater to hold said stock as collateral for existing loans. Respondent shall immediately notify [appellant] of any event of default under said loans or any act of foreclosure, and

shall notify said bank to include [appellant] in any mailings regarding default or foreclosure. Dividends accrued on said stock shall be used to pay interest against the loans collateralized by said stock, and any distributions of dividends shall be divided equally between the parties. Respondent shall not sell or otherwise dispose of any of said stock without the prior written consent of [appellant]. At such time as said stock is released from its position as collateral, one-half the share shall immediately be distributed to [appellant] and one-half to respondent.

9. Respondent shall assume and hold [appellant] harmless from the payment of the debts of the parties at First National Bank of St. Paul and First National Bank of Stillwater and Merchants Bank of Mobile, Alabama, except that [appellant] shall be solely responsible for the first and second mortgages on the home described in paragraph 7(a) hereinabove. In the event the respondent defaults in any of his obligations as described in this paragraph and the First National Bank of Stillwater forecloses on the Merrill-Lynch stock jointly held by them as collateral, the respondent shall have no obligation to reimburse [appellant] therefor. Neither party shall incur credit in the name of the other, and each shall be responsible for his or her own existing personal debts based upon purchases made or credit incurred since the date of separation of the parties.

(Emphasis added.) Mary Jean claims the term "existing loans" includes only the loans in existence when judgment was entered in 1979, and not renewals of those loans. She argues that the renewals are actually new loans with new notes and new interest rates. She also claims that Frank released his stock while repledging hers.

We must interpret the terms of a divorce decree to be reasonable, effective, and conclusive so it harmonizes both the law and the facts of the case. *Palmi v. Palmi*, 273 Minn. 97, 104, 140 N.W.2d 77, 82 (1966). To arrive at the meaning of a judgment or decree, the judgment should be considered as a whole by a court interpreting any clause or sentence therein. *Id.* at 102, 140 N.W.2d at 81.

We have reviewed the language of the decree and we agree with the trial court's interpretation. The court's finding that the clause, "[i]n the event the respondent defaults * * * and the First National Bank of Stillwater forecloses on the Merrill-Lynch stock jointly held by them as collateral, the respondent shall have no obligation to reimburse petitioner therefor," allows Frank to renew the notes, is reasonable, and is supported by the evidence. *See Halverson v. Halverson*, 381 N.W.2d 69, 72 (Minn.Ct. App.1986). Between 1979 and 1985, Mary Jean acquiesced in several renewals of the notes. She benefited by the renewals because the renewals prevented Frank from defaulting on the loans with no obligation to reimburse her for the loss. Allowing renewals of the notes without Mary Jean's signature is within the court's discretion.

■ Moreover, the execution of a renewal note evidences a new promise to pay the same debt. It does not constitute discharge of the original note; it merely extends the time for payment. *Farmers Union Oil Co. v. Fladeland*, 287 Minn. 315, 319, 178 N.W.2d 254, 257 (1970).

■ We hold the terms of the decree allow renewals of the loans referred to in the decree and that the court acted within its discretion by authorizing renewals without Mary Jean's signature. At oral argument, appellant asked this court for other forms of relief she did not request at trial. These matters are beyond our scope of review.

### DECISION

The judgment and decree permits renewals of the loans secured by the parties' jointly-owned stock.

Affirmed.

RANDALL, Judge (concurring specially).

I agree with the majority that the trial court correctly construed the language in

the original decree to permit renewal of the notes secured by the parties' jointly owned shares of stock without appellant's consent. However, after reaching that conclusion, in the interests of fairness, I would have remanded to the trial court with directions to further construe a latent ambiguity. A clarification of the property division, which does not result in a judgment different from the original, does not conflict with the general rule that property divisions are final. *Thompson v. Thompson*, 385 N.W.2d 20, 22 (1986), *citing Stieler v. Stieler*, 244 Minn. 312, 70 N.W.2d 127 (1955).

At the present time, the outstanding loan principal is approximately $33,000. Since the dissolution, the stock has split. The stock presently trades at about forty dollars per share. Due to prior stock releases, respondent has reduced the portion of his stock held by the bank to 300 shares, while 1050 of the shares held by the bank are attributable to appellant. The value of the Merrill Lynch stock held by the bank is therefore around $54,000. The value of appellant's shares alone is about $42,000. Should the stock be sold now and the loan entirely paid off, most of the balance would belong to appellant.

Respondent's financial interest in this matter is thus minimal compared to appellant's. Respondent will suffer no loss if the stock is liquidated to pay the loan. Appellant will gain her own cash for her own use, which is denied her now by respondent's actions. If respondent is entitled to indefinitely renew these loans and only pay on the interest, appellant is forever deprived of her share of the stock which represents the excess of the amount needed to cover the loan.

Respondent's attorney concedes that under the trial court's interpretation of the decree, respondent is *never* legally required to pay off the principal on the loan. Respondent can indefinitely control appellant's stock by keeping the interest current and renewing the existing loans. Arguably, respondent's estate could continue to pay only the interest, renew the loans in-definitely, and deprive appellant of her share of the stock.

I cannot find that the parties originally intended such an indefinite agreement, and I therefore find a latent ambiguity in the decree. I would hold that, implicit in the decree, is the concept that within some reasonable time the loans would be paid off and the remaining stock returned to the party or parties entitled to receive it.

Respondent argues that he does not wish to default because he has a credit rating and a business reputation to maintain. Since he has the equivalent of cash as collateral for the loan, appellant would not default by exercising his option to have the collateral applied against the loan to pay it off. Here, the liquid stock with a cash value of $42,000 supports a loan of $33,000. Respondent is entitled to direct the bank to liquidate the proceeds, take the check, pay off the principal in full, and distribute the remainder to himself and appellant. That would not be a default. Under these circumstances, it would constitute a fair and prudent business practice.