**In re Donald Ernest GROVE, Debtor.**

**SECURITY PACIFIC FINANCE CORP., Plaintiff,**

**v.**

**Donald Ernest GROVE, Defendant.**

**Bankruptcy No. 4–86–981.
Adv. No. 4–86–116.**

United States Bankruptcy Court,
D. Minnesota.

May 15, 1987.

Dwight R.J. Lindquist, Minneapolis, Minn., for plaintiff.

Gregory R. Solum, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on the parties' cross motions for summary judgment. Dwight R.J. Lindquist appeared for the plaintiff, Security Pacific Finance Corporation, and Gregory R. Solum appeared for the defendant, Donald E. Grove. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Based on the evidence and the file of this proceeding, I make the following:

## MEMORANDUM ORDER

Security Pacific brought this proceeding on July 7, 1986, to determine the dischargeability of Grove's debt under 11 U.S.C. § 523(a)(2). Both parties move for summary judgment pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. The relevant facts are not disputed.

### I.

On December 6, 1983, Donald Grove together with his wife, Valerie Grove, executed a promissory note to Security Pacific for an unsecured loan of $10,303.49. The note had a five-year term and accrued interest at a rate of 20.75 percent. The note was signed by Donald and Valerie Grove.

In August of 1984, Donald Grove applied to Security Pacific for an additional loan of approximately $500.00. Security Pacific agreed to loan Grove the money if he and his wife would sign a second promissory note that encompassed their entire debt. On August 31, 1984, a second promissory note was executed for $10,733.08. The loan included $8,310.32 to retire the December 6, 1983 note, $1,918.08 for life insurance premiums,[1] and $504.68 in cash paid

---

1. There was a total of $3,721.57 in life insurance premiums charged in the two loan transactions, $1,918.08 for the August 31st loan and $1,803.49 for the December 6th loan. This helps explain

to Donald Grove. The new note had a term of five years and accrued interest at a rate of 21.75 [2] percent. It purports to be signed by Donald and Valerie Grove.

In reliance on the August 31st note, Security Pacific stamped the December 6th note "cancelled" and surrendered it to Donald Grove. Sometime in September 1985, Security Pacific learned that Donald Grove had forged his wife's signature on the August 31st promissory note. On May 19, 1986, Valerie Grove signed an affidavit of forgery stating that she neither signed nor authorized Donald Grove to sign her name to the August 31st note.

Donald Grove filed a Chapter 7 bankruptcy petition on April 3, 1986. Security Pacific is listed as an unsecured creditor in Grove's A–3 Schedule for $10,526.25. Security Pacific brought this adversary proceeding to determine whether that debt is nondischargeable under 11 U.S.C. § 523. Both parties now move for summary judgment pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56.[3]

## II.

■ Summary judgment may be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *See Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 391 (8th Cir.1986). This proceeding is appropriate for summary judgment because both parties agree on the relevant facts. The only issues are questions of law.

### (A) *Dischargeability*

■ Security Pacific alleges that Donald Grove's debt is nondischargeable under § 523(a)(2)(A). That section excepts debt from discharge:

why Security Pacific insisted on a new note for both loans rather than simply writing a second note for $504.68.

**2.** The increased interest rate also explains why Security Pacific rewrote the first note.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A). To prevail, Security Pacific must prove the following elements by clear and convincing evidence:

1. The obtaining of money, property, services, or an extension, renewal, or refinancing of credit by a debtor,

2. Using a false representation pertaining to a past or present fact,

3. With knowledge of the representation's falsity, or its assertion as a fact with reckless disregard for its truth or falsity,

4. And an intention to deceive the other party or to induce the other party to act upon the representation,

5. Reasonable reliance by the creditor upon the misrepresentation, and

6. Resultant damage to the creditor.

*Oppenheimer v. Reder*, 60 B.R. 529, 534 (Bktcy.D.Minn.1986). *See also, Western Petroleum Co. v. Burgstaler*, 58 B.R. 508, 512 (Bktcy.D.Minn.1986); *Associated Dry Goods Co. v. Johnson*, 40 B.R. 756, 758 (Bktcy.D.Minn.1984). Because Donald Grove admits that he forged his wife's signature on the August 31, 1984 promissory note, all the elements of § 523(a)(2)(A) have been proved. The sole issue in this proceeding is amount of the damage.

■ Section 523(a)(2)(A) excepts debts from discharge "*to the extent obtained by ... false pretenses, a false representation, or actual fraud....*" 11 U.S.C. § 523(a)(2)(A) (emphasis added). In other words, only the debt incurred through fraud is nondischargeable. Because exceptions to discharge are to be narrowly construed, *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Oppenheimer v. Reder*, 60 B.R. 529, 533

**3.** Donald Grove only moves for partial summary judgment, conceding that the $504.68 in new cash received on August 31, 1984, is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

(Bktcy.D.Minn.1986), courts have reasoned that a debtor should not "be deprived of discharge on all his indebtedness to a particular creditor simply because a small portion of it was procured dishonestly." *See Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977).[4]

The issue, therefore, is the extent to which the creditor was damaged by the debtor's fraudulent conduct. Grove argues that the amount of nondischargeable debt is $504.68, the new cash loaned on August 31, 1984. Security Pacific argues that the entire amount of the unpaid principal and interest on the August 31st note is nondischargeable. It claims because it cancelled the December 6, 1983 promissory note it has no recourse against Valerie Grove. Consequently, the loss it incurred as a result of Grove's fraud included the unpaid amount on the cancelled note.

Determining the amount of nondischargeable debt in this case necessarily depends on Security Pacific's rights against Valerie Grove on the December 6th promissory note. If Security Pacific has a claim against her under Minnesota law on the December 6th note, then Grove is correct and only $504.68 of the debt is nondischargeable. On the other hand, if Security Pacific has no recourse against Valerie Grove on the December 6th note, then the amount of nondischargeable debt is the entire unpaid balance on the August 31st promissory note.

(B) *Rights Against Valerie Grove*

■ The first question is whether Security Pacific has any right against Valerie Grove on the August 31, 1984 promissory note. Minnesota statute § 336.3–404(1) provides that "[a]ny unauthorized signature is wholly inoperative as that of the person whose named is signed . . ." unless that person later ratifies it. Minn.Stat. § 336.3–404(1) (1986). The evidence clearly shows that Valerie Grove neither signed

nor ratified the August 31st note. As a result, the note is unenforceable against her.

The second, and more difficult question, is whether Security Pacific can recover against Valerie Grove on the December 6, 1983 promissory note. There is no doubt that the note was properly executed and that Valerie Grove would be liable on the note but for the second loan transaction on August 31, 1984. However, Security Pacific argues that the act of stamping the December 6th note "cancelled" and surrendering it to Donald Grove discharged Valerie Grove from liability. *See* Minn.Stat. § 336.3–601 (1986).

■ Under Minnesota law, a party may be discharged from liability on a negotiable instrument in a number of ways:

(a) payment or satisfaction (section 336.-3–603); or

(b) tender of payment (section 336.3–604); or

(c) cancellation or renunciation (section 336.3–605); or

(d) impairment of right of recourse or of collateral (section 336.3–606); or

(e) reacquisition of the instrument by a prior party (section 336.3–208); or

(f) fraudulent and material alteration (section 336.3–407); or

(g) certification of a check (section 336.-3–411); or

(h) acceptance varying a draft (section 336.3–412); or

(i) unexcused delay in presentment or notice of dishonor or protest (section 336.3–502).

Minn.Stat. § 336.3–601(1) (1986). Two methods of discharge are applicable in this case: payment or satisfaction under § 336.-3–603 and cancellation or renunciation under § 336.3–605.[5] In either case, I find

---

**4.** Although *Danns* is a pre-Code case, its reasoning was specifically cited by Congress in promulgating 11 U.S.C. § 523(a)(2). *See* 124 Cong. Rec. H32399 (daily ed. Sept. 28, 1978) (statement by Rep. Edwards), *reprinted in,* 1978 U.S. Code Cong. & Admin. News 6436, 6453. Moreover, the Eighth Circuit agrees with the logic of

*Danns* in the context of a § 523(a)(2)(A) determination. *See Jennen v. Hunter,* 771 F.2d 1126, 1130 (8th Cir.1985).

**5.** The parties analyze the August 31st loan transaction as a cancellation of the December 6th note, but I think it is more properly character-

that the December 6th note was not discharged and that Security Pacific has a right to collect against Valerie Grove.

Minnesota statute § 336.3–605(1) provides:

(1) The holder of an instrument may even without consideration discharge any party

(a) in any manner apparent on the face of the instrument or the endorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

(b) by renouncing the holder's rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

Minn.Stat. § 336.3–605(1) (1986). The question here is whether a cancellation induced through fraud acts as a discharge under § 336.3–605 with respect to an innocent co-obligor. Although there are no Minnesota cases on point, it is generally held that an unintentional cancellation does not discharge the parties to the instrument. *See Household Finance Co., Inc. v. Watson,* 522 S.W.2d 111, 116 (Mo.Ct.App.1975); *Guaranty Bank & Trust Co. v. Dowling,* 4 Conn.App. 376, 494 A.2d 1216, 1219 (1985) (interpreting a Connecticut statute with language almost identical to Minn.Stat. § 336.3–601); 11 Am.Jur.2d *Bills and Notes* § 906 (1964) and the cases cited therein.[6] Likewise, a cancellation induced through fraud does not act to discharge the parties. *See e.g., Stahl v. Rovins & West, Inc.,* 29 A.D.2d 280, 287 N.Y.S.2d 226, 227 (1968) (the surrender of a note and the acceptance of a renewal note without knowledge that the new note is a forgery,

does not discharge the original note nor the parties thereto.). *See also Copp v. Van Vleck,* 104 N.J.Eq. 129, 144 A. 450, 451 (1929); 11 Am.Jur.2d *Bills and Notes* § 905 (1964). As a result, I find that Security Pacific's act in marking the December 6th note "cancelled" and surrendering it to Donald Grove, when the cancellation was induced through fraud, does not act to discharge Valerie Grove under Minn.Stat. § 336.3–605 (1986).

The second possible method of discharge is payment or satisfaction. Minnesota statute § 336.3–603 provides in general that "[t]he liability of any party is discharged to the extent of the party's payment or satisfaction to the holder...." Minn.Stat. § 336.3–603(1) (1986). Mere execution of a new note to cover the debt evidenced by an existing note does not constitute payment of the original note, but acts only as an extension of time for payment. *See Peoples National Bank v. Boyer,* 354 N.W.2d 559, 560 (Minn.Ct.App. 1984); *Farmers Union Oil Co. v. Fladeland,* 287 Minn. 315, 178 N.W.2d 254, 256 (1970). *See also Holden v. Farwell, Ozmun, Kirk & Co.,* 223 Minn. 550, 554–55, 27 N.W.2d 641, 644 (1947) (The mere acceptance of a renewal note, even if it states that the note is received in settlement or payment of a prior obligation, is only a conditional payment and does not constitute an absolute discharge of the original note.). However, one note may be accepted as payment of another if supported by consideration and intended as such by the parties. *Id. See also In re Larson,* 359 N.W.2d 281, 284 (Minn.Ct.App.1984) (Whether the new note acts as payment of the original note depends on the facts, cir-

---

ized as a payment or satisfaction. Although the word "cancelled" is stamped on the December 6th note, it appears that the parties intended the August 31st note to be a payment or satisfaction of the December 6th note. The "Itemization of Amount Financed" on the August 31st note lists $8,310.32 "to fully pay other account with you." $8,310.32 was the amount due on the December 6th note.

**6.** In *Guaranty Bank & Trust Co. v. Dowling,* the court held:

Having concluded that the note was cancelled by mistake, the trial court properly deter-

mined, under § 42a–3–605(1), that the debt was unintentionally discharged. While the mistaken discharge may well have been attributable to the plaintiff's [bank's] negligence, that fact does not permit the defendant to gain a benefit to which he is not entitled, particularly without any showing that he changed his position in reliance on the plaintiff's act. We accordingly conclude that the unintentional cancellation of the note did not discharge the defendant of his obligation as endorser.

494 A.2d at 1219. (citations omitted).

cumstances, and intention of the parties. The fact that the interest rate changed and the words "paid by renewal" were stamped on the original note do not indicate a payment or discharge of that note.).

In *Peoples National Bank v. Boyer*, the Minnesota Court of Appeals held that the consolidation of two separate notes into a new note at a higher rate of interest discharged the guarantors of the original notes. 354 N.W.2d 559, 560 (Minn.Ct.App. 1984).[7] The court found that the evidence clearly demonstrated that the new note was substituted in full satisfaction of the guaranteed notes:

> Plaintiff bank told Donald F. Boyer that the new notes were substituted for the old. The trial court found that all bank records indicated that the guarantied notes were paid. The new notes were made with new consideration in the form of higher interest rates. New insurance premiums were charged on each new note. The bank made repeated requests for new guaranties from the Boyers.

*Id.* Under the circumstances, the court determined that the guaranties on the original notes were discharged.

The facts of this case are analogous to those in *Boyer*. The new note had a higher rate of interest, new insurance premiums were charged, and the bank records show that the original note was cancelled. However, there is one important difference in this case. The execution of the new note was a result of fraud. The bank clearly would not have surrendered the December 6th note if it had known that Donald Grove forged his wife's signature on the August 31st note.

Whether an obligor's fraud in executing a new note affects the discharge under Minn.Stat. § 336.3–603 of an innocent co-obligor on the original note appears to be an issue of first impression in Minnesota. Other courts that have considered the issue have concluded that the discharge is not effective if induced through fraud. *See, e.g., Citizens Fidelity Bank & Trust Co. v. Stark*, 431 S.W.2d 722, 724 (Ky.1968) (interpreting a statute with language identical to Minn.Stat. § 336.3–603 (1986)); *Droege v. Hoagland State Bank*, 86 Ind.App. 236, 156 N.E. 592, 593 (1927). In *Droege*, the court held that:

> It is well established that the good-faith acceptance of a renewal note from the principal, to which renewal the signature of the surety is found to be a forgery, does not operate as payment of the original note or as an extinguishment of the payee's right of action thereon. *Allen v. Sharpe* (1871) 37 Ind. 67, 10 Am.Rep. 80; *Albright v. Griffin* (1881) 78 Ind. 182; *West Philadelphia Nat. Bank v. Field* (1891) 143 Pa. 473, 22 A. 829, 24 Am.St. Rep. 562.

86 Ind.App. 236, 156 N.E. at 593. Thus, it is logical to conclude in this case that Valerie Grove's obligation under the December 6th note is not discharged under Minn.Stat. § 336.3–603 (1986).

### III.

Security Pacific has proven all the elements of a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A). However, § 523(a)(2)(A) only excepts debts from discharge to the extent obtained by fraud. Because Security Pacific has a right to collect the unpaid balance of the December 6th promissory note from Valerie Grove, the only loss it incurred as a result of Donald Grove's fraud is $504.68.[8]

THEREFORE, IT IS ORDERED:

---

**7.** The bank in *Boyer* brought an action against Donald E. and Dorothy Boyer, the guarantors of two promissory notes executed by their son, Donald F. Boyer. The guaranties were signed in October 1977 and May 1979. In August 1981, however, the notes were consolidated into one new note that the Boyers did not guarantee. The new note accrued interest at a higher rate, and required new insurance premiums to be paid. In March 1982, Donald F. Boyer filed bankruptcy and the bank attempted to collect the unpaid balance on the consolidated note from Donald E. and Dorothy Boyer.

**8.** Apparently, Grove made some payments on the note which would be credited on a pro rata basis toward the $504.68 debt. *See Jennen v. Hunter*, 771 F.2d 1126 (8th Cir.1985). However, he offered no proof of any payments to offset the debt.

1. Donald E. Grove's motion for partial summary judgment is granted.

2. Security Pacific Finance Corporation's motion for summary judgment is granted in part and denied in part.

3. Security Pacific Finance Corporation shall recover from Donald E. Grove $504.68 plus accrued interest of $358.66, and costs of $60.00 for a total of $923.34.

4. The debt represented by paragraph 3 is not discharged.

5. The remainder of Donald E. Grove's debt to Security Pacific Finance Corporation is discharged.

LET JUDGMENT BE ENTERED AC-CORDINGLY.