BORG WARNER ACCEPTANCE CORP., Respondent,

v.

SHAKOPEE SPORTS CENTER, INC., et al., Defendants,

John Dobson, et al., Appellants.

No. C2-87-1707.

Court of Appeals of Minnesota.

Feb. 9, 1988.

David K. Hackley, Minneapolis, for respondent.

Stephen W. Walburg, Shakopee, for appellants.

Heard, considered and decided by FOLEY, P.J., and SCHUMACHER and STONE,* JJ.

**OPINION**

SCHUMACHER, Judge.

This is an appeal from a summary judgment granted in favor of respondent Borg Warner Acceptance Corporation. On June 11, 1986, Borg Warner initiated this suit against Shakopee Sports Center, Inc. and the principals of Shakopee Sports for money due on an inventory security agreement and on personal guaranties. The suit against Shakopee Sports was stayed due to bankruptcy, and on April 14, 1987, the trial court granted summary judgment against appellants on the personal guaranties. We reverse and remand.

**FACTS**

Beginning in 1972, John Dobson was employed by Shakopee Sports Center, Inc. as

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

a boat rigger and service manager. In 1978, he became a 6% shareholder of Shakopee Sports. Beginning in 1979, Shakopee Sports entered into a series of 3 inventory security agreements with Borg Warner Acceptance Corp. in 1979, 1982 and 1984. All three security agreements were secured by personal guaranties of the principals of Shakopee Sports and their spouses. In 1982, this included Dobson and his wife, the appellants herein.

On January 25, 1984, Dobson left Shakopee Sports and tendered his 6% share back to the corporation. The stock purchase agreement contained the following language:

> Shakopee Sports Center, Inc. will hold John Dobson harmless from any and all dealings of this corporation from and after the date of this agreement.

At that time however, Dobson failed to notify Borg Warner that he wished to revoke his personal guaranty, which respondent admits could have been accomplished by a simple one sentence letter. In support of his motion for summary judgment, John Dobson submitted an affidavit establishing that in January of 1984, he was aware that Borg Warner would be seeking new personal guaranties from the remaining principals for future inventory. Appellant contends that he simply forgot to mail the notice of revocation.

On September 18, 1984, Shakopee Sports entered into a new inventory security agreement with Borg Warner for inventory to be delivered in late 1985 and 1986. At the approximate time the inventory was to be delivered, Borg Warner sought personal financial statements and new personal guaranties from the principals of Shakopee Sports. These were provided by defendants Bjorklund and Aslakson on September 25, 1985.

On June 1, 1986, Shakopee Sports ceased doing business because Borg Warner would no longer agree to finance their inventory. Apparently, Aslakson and Bjorklund then sold the remaining inventory out of trust and pocketed the proceeds.

In granting summary judgment in favor of respondents, the trial court found that the unconditional language of the 1982 personal guaranty executed by the Dobsons extended to the 1984 security agreement. Because of the insolvency of the other defendants, Borg Warner is looking to the Dobsons for the entire sum.

## ISSUE

Did the trial court err in granting summary judgment in favor of respondent on the ground that appellant was liable on the personal guaranties?

## ANALYSIS

On appeal from summary judgment, it is the function of this court to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979), *pet. for rev. denied* (July 11, 1979).

When interpreting a guaranty agreement, "each case must depend upon the terms of the instrument under consideration." *Tolerton & Stetson Co. v. Barck*, 81 Minn. 470, 471, 84 N.W. 330, 331 (1900). A guaranty agreement is to be given a fair and reasonable construction and will not be enlarged beyond the fair and natural import of its terms. *American Tobacco Co. v. Chalfen*, 260 Minn. 79, 81, 108 N.W.2d 702, 704 (1961).

At first glance, the guaranty in question appears to be absolute, unconditional and continuing. However, under *American Tobacco*, the agreement should be construed fairly and reasonably. Regardless of the language, the law is clear that the guaranty does not continue forever and will be construed to be limited to a reasonable time under the circumstances of the case. The supreme court held that a reasonable time was at least three years in *Continental Can Co. v. Lanesboro Canning Co.*, 180 Minn. 27, 29, 230 N.W. 121, 122 (1930). In a case similar to this, involving a guaranty which this court found to be absolute, unconditional and continuing, we adopted the three-year rule of *Continental Can* as a reasonable time for that guaranty

to continue also. *Tri–County State Bank of Ortonville v. Golf Properties, Inc.*, 395 N.W.2d 409, 412 (Minn.Ct.App.1986). Both of these cases based the three year limit on the specific facts and circumstances of each case.

■ When determining the liability of a guarantor, this court looks to the principal contract to which the guaranty relates. *Hungerford v. O'Brien*, 37 Minn. 306, 307, 34 N.W. 161 (1887). The principal contract underlying the 1982 guaranty is the contemporaneous inventory security agreement. A new security agreement was signed on September 18, 1984, for inventory which was delivered in late 1985 and 1986. At approximately the time this inventory was delivered, new personal guaranties were requested by Borg Warner, and signed by Bjorklund and Aslakson in September of 1985. It is undisputed that the inventory which is the basis of this lawsuit was ordered pursuant to the 1984 security agreement.

When construing a contract, it is the function of the court to do so in light of the intention of the parties. *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974).

The intent of the parties expressed in the 1982 guaranty was that it would continue in effect as long as the Dobsons wished to guaranty future corporate debts. To rescind, the Dobsons could at any time notify Borg Warner in writing that he would no longer guaranty any future debt of Shakopee Sports. At the time Dobson severed his ties with Shakopee Sports in 1984, he gave no written notice to Borg Warner rescinding his personal guaranty.

■ The issue thus becomes whether the Dobsons' April 12, 1982 personal guaranty can be construed fairly and reasonably to apply to merchandise delivered in 1985 and 1986, which was secured by new personal guaranties of Bjorklund and Aslakson. We note that case law interpreting indefinite guaranties has interpreted a "reasonable time," to be 3 years. *See, e.g., Tri–County State Bank*, 395 N.W.2d 409. Borg Warner had sought new personal guaranties

periodically every three years: 1979, 1982 and 1985.

Relevant to both a determination of the intent of the parties and a fair and reasonable construction of the 1982 security agreement is the fact that in 1985 Borg Warner sought and received new personal guaranties from Bjorklund and Aslakson, the only then shareholders, for the merchandise in question, and did not seek one from the Dobsons. Also relevant to the construction of the 1982 guaranty is whether Borg Warner had knowledge that Dobson was no longer a principal in Shakopee Sports at the time it sought new personal guaranties from Bjorklund and Aslakson.

Appellant argues that there is a fact issue as to whether Borg Warner had actual or constructive notice that Dobson was no longer a principal in the corporation. It is undisputed that Borg Warner received new personal guaranties from all principals of Shakopee Sports in September 1985, to secure the inventory which was the subject of the 1984 security agreement, and did not seek or receive one from the Dobsons. In fact, Borg Warner submitted the affidavit of Richard D. Key in support of its motion for summary judgment, which states:

The personal guaranty of *all* shareholders has always been a condition of entrusting inventory to Shakopee Sports Center, Inc. Without such personal guaranties, [Borg Warner] would have refused any credit to Shakopee Sports Center, Inc. (emphasis added).

This is sufficient to create a fact issue as to whether Borg Warner had notice that Dobson had left the corporation. Whether Borg Warner had knowledge is relevant to the construction of the 1982 guaranty under the rule of *American Tobacco*, which requires that the guaranty be construed fairly and reasonably. Also relevant is the point in time at which Borg Warner may have acquired this knowledge. These facts are not apparent from the record and the parties should be permitted to litigate them.

We conclude that there are genuine issues of material fact as to Borg Warner's

knowledge regarding the Dobsons' interest in Shakopee Sports.

## DECISION

Because we conclude that there is a genuine issue of material fact, the summary judgment granted in favor of respondents is hereby reversed and remanded for a trial on the merits.

Reversed and remanded.

FOLEY, Judge (dissenting).

I respectfully dissent. However desirable it might be to achieve a result favorable to the Dobsons, neither the facts nor the law warrant such a result. This is an action at law; not a suit in equity. There is no alleged fraud, misrepresentation, or other inequitable conduct. The case, simply stated, is one to enforce an absolute, unconditional, continuing guaranty which remained extant at the time of the loss.

The majority recognizes that to rescind, the Dobsons could at any time notify Borg Warner in writing that they would no longer guaranty any future debt of Shakopee Sports. The majority also acknowledges at the time Dobson severed his ties with Shakopee Sports in 1984, he gave no written notice to Borg Warner rescinding his personal guaranty. Regrettably, having recognized the controlling facts in this case, the majority opinion proceeds to reverse on totally irrelevant grounds.

1. Although no ambiguity exists in the guaranty, the majority proceeds to determine the intent of the parties when the guaranty speaks for itself. The guaranty the Dobsons signed provides:

[T]he undersigned, jointly and severally, * * * hereby absolutely guarantees the full and prompt payment of any and every indebtedness, liability or obligation * * *, which may now or at any time and from time to time hereafter exist or be incurred by DEBTOR to you, * * *.

* * * * * *

We consent that you may, without in any manner affecting the undersigned's liability and upon such conditions as you may deem advisable: (1) extend in whole or in part (by renewal or otherwise), modify, premature, change or release any indebtedness, liability, or obligation of DEBTOR or of any other person. * * * The undersigned and each of them hereby ratifies and confirms any such extension, renewal, modification, prematuration, change, release, sale, surrender, impairment, exchange, substitution, settlement, adjustment or compromise, and agrees that the same shall be binding upon the undersigned, and hereby waives any and all defenses, counterclaims or offsets which the undersigned might or could have by reason thereof, it being understood that the undersigned, as guarantor hereunder, shall at all times be and remain liable to you.

It is clear from this guaranty that it applied to more than just the 1982 inventory security agreement. *See Peoples State Bank of Plainview v. Muir*, 386 N.W.2d 321, 324 (Minn.Ct.App.1986), *pet. for rev. denied* (June 30, 1986). This is a continuing guaranty whereby the Dobsons were liable on any and all agreements entered into between Borg Warner and Shakopee Sports after April 12, 1982. Adequate consideration for the guaranty is not challenged.

Parties to a contract may bargain away rights. *See Midway National Bank v. Gustafson*, 282 Minn. 73, 78, 165 N.W.2d 218, 222 (1968). To maintain the integrity of guaranty agreements, plainly written documents will bind competent guarantors even when they have bargained away significant rights. *See id.*

The Dobsons willingly signed the 1982 guaranty. They do not claim any ambiguity existed in the guaranty they signed. They cannot now argue they are not bound by the agreement they signed.

2. Although there are no equities present in this case, the majority adopts as grounds for reversal that it is a fact issue whether Borg Warner had knowledge that Dobson was no longer a principal in Shakopee Sports at the time it sought the 1985 personal guaranties from Bjorklund and Aslakson.

It is unimportant whether Borg Warner was aware of the Dobsons disassociation with Shakopee Sports at the time it required additional guaranties in 1985. Borg Warner could have asked anyone to sign these additional guaranties. The fact that Borg Warner chose to have the principals of Shakopee Sports sign the additional guaranties before entrusting the merchandise to them has no bearing on the 1982 guaranty of the Dobsons. The majority and the Dobsons recognize the 1984 inventory security agreement is the underlying contract in this case. Yet, both the majority and the Dobsons fail to acknowledge the 1982 guaranty obviously applies to the 1984 inventory security agreement.

In addition, Borg Warner had no obligation to keep track of the make-up of the corporation. However, the Dobsons did have a duty to make sure that the corporation performed their obligation to Borg Warner. "[I]t is up to the surety to see to it that the principal performs his duty." *Minnesota Federal Savings & Loan Association v. Central Enterprises of Superior,* 311 Minn. 46, 52, 247 N.W.2d 46, 51 (1976).

3. The majority opinion consistently refers to *new* personal guaranties being required by Borg Warner in September, 1985 in a veiled attempt to apparently establish a release of the Dobsons from their 1982 guaranties. If this were the law, it would be a novel approach in view of the fact that Borg Warner had every right to seek *additional* guaranties to secure the inventory subject to the 1984 inventory security agreement without the additional guaranty constituting a release of an already existing guaranty.

The 1985 guaranties contain no language of release or revocation of prior guaranties. In 38 Am.Jur.2d *Guaranty* § 85 (1968) it states:

> The fact that the creditor, in order to insure payment of the debt which is due him, has taken additional security there-

for does not have the effect of releasing or discharging the guarantor of liability on his contract of guaranty. * * *.

The additional security taken by the creditor may be in the form of a new guaranty. When this occurs, the prior guaranty contract is not extinguished by the execution of the subsequent contract of guaranty if the subsequent contract was not executed as a substitute for the earlier one. The mere acceptance of a guaranty of a corporate indebtedness for one year does not extinguish the liability of the makers of a similar instrument executed the preceding year. But discharge of the guarantor by taking a new guaranty will result when it is shown that the parties so intended.

Subsequent guaranties are not seen as releases of prior guaranties. *Farmers Union Oil Co. v. Fladeland,* 287 Minn. 315, 319, 178 N.W.2d 254, 257 (1970); *Peoples National Bank of Mora v. Boyer,* 354 N.W.2d 559, 560 (Minn.Ct.App.1984). The record does not support a finding that when Borg Warner required new guaranties in 1985, it intended to release the Dobsons from their 1982 guaranty. Borg Warner had periodically obtained additional security from the corporation by means of an additional guaranty. The record establishes the 1985 guaranty was nothing more than additional security obtained prior to the entrustment of the inventory pursuant to the 1984 inventory security agreement.

To repeat, there is no basis in law or fact for a reversal in this case. Were the majority opinion to stand, the law with regard to creditor's rights in the field of guaranty would be totally emasculated. I would affirm the decision of the trial court.