ALBERT L. HOGAN, EXECUTOR OF ESTATE OF PETER PAUL, v. CHURCH OF ST. ANNE OF LE SUEUR.[1]

May 23, 1952.

No. 35,754.

---

[1]Reported in 53 N. W. (2d) 449.

*Lewis L. Anderson,* for appellant.
*Arthur E. Anderson* and *M. J. Daly,* for respondent.

MAGNEY, JUSTICE.

Defendant is a religious corporation with its church and parish house located in Le Sueur.

On May 6, 1926, defendant made, executed, and delivered to one Peter Paul, its promissory note. It promised to pay to Peter Paul five years after said date $3,600, with interest at five percent per annum. On November 20, 1934, it paid $150 on the principal. Interest was paid on the principal amount then remaining unpaid to and including May 6, 1943. On or about August 1, 1944, Paul duly demanded payment. Defendant refused to pay the note or any part thereof. Paul died testate September 1, 1944. Letters testamentary were issued to Albert L. Hogan, plaintiff herein. In an action brought on the note, he prays judgment for $3,450, with interest thereon at the rate of five percent per annum from May 6, 1943.

In its amended answer, defendant alleges that Paul was a member of defendant congregation; that on or about May 6, 1926, it contemplated the building of a parsonage and church; that Paul, on or about said date, for the purpose of making a donation to defendant, entered into an agreement with defendant, whereby he agreed that he would donate the sum of $3,600 to defendant to be used in its building program; that defendant would pay interest to Paul at the rate of five percent per annum during the term of his natural life; that defendant would execute to Paul a promissory note as evidence of the amount of interest to be paid and for no other purpose; and that at the death of Paul the note was to be surrendered and returned to defendant. It further alleged that the note was part of the entire agreement hereinbefore set forth, but did not constitute the whole agreement; and that said note

was executed only in part performance of the original agreement and not as a separate agreement. It further alleged that in 1935 defendant refinanced by the issuance of bonds its entire indebtedness at a lower rate of interest and paid up all notes, mortgages, and other outstanding obligations except the note of Paul; that Paul insisted that the agreement be carried out and that defendant, pursuant to its agreement, continued to pay interest to Paul at the rate of five percent per annum. It further alleged that at the time Paul made the donation to defendant he insisted that the then pastor of the church publicly announce from the pulpit that he had made this donation, and that the pastor did so publicly announce the fact of Paul's donation. Defendant demands judgment for the specific performance of the oral agreement in its entirety, that plaintiff be required to surrender and return the note upon which he has brought action, and that plaintiff take nothing. The court found for defendant. Plaintiff appeals from the judgment entered pursuant to the court's findings.

The original note, together with endorsements of payments of interest to May 6, 1943, and payment on November 20, 1934, of $150 on principal, was offered and received in evidence. The court received in evidence the testimony of Father William Cashman, who was in charge of defendant congregation at the time the church and parsonage were constructed, that the building program was financed by notes given to parishioners for loans. A regular corporation note, the one in litigation, was given to Paul in exchange for $3,600. He testified that he had an understanding and agreement with Paul to the effect that whatever money was due on the note at Paul's death would accrue to the parish. He was asked:

"Q. What was the nature of that understanding?

"A. The nature was at his decease whatever money was on that note would accrue to the parish.

"Q. Was it your understanding that was to be in the nature of a gift and donation to the parish?

"A. Yes, of course."

He said there was a further understanding that if Paul wanted one hundred or five hundred or a thousand dollars he could get it at any time. This, he said, was the general practice of the church regarding donations of a special kind such as this. He was then asked:

"Q. Was it your understanding, Father, that the balance of the note which might be payable at the time of his death would accrue to the church?

"A. Yes."

Exhibit 1, a minute book of the meetings of the trustees, was received in evidence. The minutes of the meeting of the trustees held on August 24, 1935, contained this notation:

"* * * The notes of the parish amount to 47,200 less 2,000 of P. Paul which accrues to the parish at his death."

Father Cashman was leaving the parish on that or the following day, and the purpose of the meeting, since he was about to leave, was to make a record of certain items showing the financial status of the affairs of the parish. Father Cashman testified:

"Because we wished to incorporate in the minutes of the parish the agreement that was made between us from the beginning.

"Q. That was between yourself and Peter Paul?

* * * * *

"A. Yes."

With reference to the $2,000 mentioned in the minutes, Father Cashman said:

"That is what is there and I have to stand by it.

* * * * *

"* * * naturally I have to stand by what I wrote down."

At the time the indebtedness of the parish was refinanced by taking up the notes and issuing of bonds at a lower interest, all the outstanding notes were picked up except that of Paul. He was given the offer, if he turned in his note, to receive the church bonds

or cash, but preferred, according to a witness, to let it stand, and said:

"* * * the only thing I want is my interest as long as I live."

Testimony was received that a public announcement was made from the altar of the church of receipt of the Paul gift, which was to accrue to the church upon his death. Testimony was also received that Paul had said that he was giving several thousand dollars to the church, that all he would get would be the interest, and that upon his death the principal would go to the church, that no principal was to be paid.

There was other testimony received which can have no bearing on the disposition we are making of the action. What we have already recited must be the basis of the determination of the legal question presented to us. Throughout, plaintiff protected his record, by appropriate objections to questions which for various reasons he considered objectionable and prejudicial, and at the close of defendant's case plaintiff's counsel moved that the testimony of all of defendant's witnesses be stricken. The motion was denied.

The court found that at the time of the execution and delivery of the note in question Paul made an outright donation and gift to defendant, and that the "note was executed and delivered * * * to evidence the right of Peter Paul to receive interest upon the principal amount of said gift," as a part of the oral agreement made by and between the parties.

We have here a conventional promissory note. By its terms, plaintiff is entitled to recover the full balance due on the note, plus interest. To bar such recovery, it would have been necessary in some manner to vary the terms of the note. Defendant offered oral testimony to show that the contract was not the one evidenced by the note, and that its terms had been varied. Plaintiff contends that the testimony offered by defendant and received and relied upon by the court in its findings was inadmissible to show a prior or contemporaneous oral agreement to vary the terms of the note.

The general rule is stated in 1 Dunnell, Dig. § 1011, as follows:

"Parol evidence is inadmissible to prove a prior or contemporaneous oral agreement varying the terms of a bill or note, as, for example, * * * that it should be paid otherwise than stipulated by its terms; * * * that a note was not to be paid according to its terms; * * * that the maker of a note was obligated thereby to pay interest thereon only and not the principal; * * *," citing cases.

There are certain exceptions to the general rule that a bill or note cannot be varied by parol evidence. They are the exceptions to the general parol evidence rule. To sustain the court in its holding that the written promissory note in question did not express the agreement between the parties, the propriety of receiving the oral testimony upon which the court came to its conclusion must be based on some exception to the parol evidence rule. We have been unable to discover the exception.

In Skogberg v. Hjelm, 211 Minn. 392, 1 N. W. (2d) 599, the action was based on a promissory note for $500, payable to one Vie A. Baxter or order, and signed by defendant. Blank spaces provided for the insertion of the maturity date and interest rate were not filled in. Defendant admitted that she received $500 from Vie Baxter and that she signed the note and sent it to her. But she claimed that the money constituted a gift that was only to be paid back if Vie Baxter herself requested repayment, and that in case Vie Baxter died before demand it was not to be repaid. The only direct evidence supporting this claim was testimony by defendant's sister of a conversation to that effect between Vie Baxter and defendant occurring at the time the money was transferred. This conversation between Vie Baxter and defendant was admitted over plaintiffs' objection that it tended to vary the terms of the note. We said (211 Minn. 394, 1 N. W. [2d] 601):

"Defendant's contention that the note was conditional depends upon the admissibility of the conversation between defendant and Vie Baxter. That evidence, offered for this purpose, runs afoul of the well established rule that parol evidence as to a prior or

contemporaneous oral agreement cannot be introduced to alter the terms of a written contract. Brown v. Backer, 166 Minn. 50, and cases cited on p. 51, 207 N. W. 20. The note did not contain a due date, but Mason St. 1927, § 7050 (N. I. L. § 7), states:

"'An instrument is payable on demand: * * *

"'(2) In which no time for payment is expressed.'

"Evidence that the note was only to be paid on Vie Baxter's demand and was noncollectible after her death contradicts the statutory interpretation and is inadmissible as it tends to alter the terms of the note by parol. In re Estate of Nygren, 188 Minn. 612, and cases cited on p. 614, 248 N. W. 215."

In the Nygren case, cited in the Skogberg case, a note payable on demand was claimed by the defendant not to be payable until the happening of a condition subsequent. We said (188 Minn. 614, 248 N. W. 216):

"The obligation of Gertrude Nygren is evidenced by the language of her promissory note. It is an unconditional promise to pay on demand. Her definite contractual obligation is to be paid on demand. The language of such an obligation cannot be varied by parol to show that it is not due until the happening of a condition subsequent," citing cases.

In the instant case, the court received evidence to the effect that the balance due on the note at the time of Paul's death would accrue to defendant as a gift or donation. There was also testimony that $2,000 of the balance due on the note at the time of Paul's death, if such an amount was still due, would accrue to defendant as a gift. It is obvious that such testimony was inadmissible as being an attempt to vary the terms of a promissory note by parol evidence. Skogberg v. Hjelm, *supra.*

The court, however, found that *at the time* of the execution and delivery of the note Paul made an outright gift of $3,600 to defendant. There is no evidence to support such a finding. All the witnesses for defendant testified that the money would accrue to the church *at the time of Paul's death,* whether it was the full

amount due on the note at that time or $2,000 of the balance then due. It is conceded that he could draw on the principal of the note if he saw fit. The amount of the gift would depend upon the amount due on the note at the time of Paul's death.

Defendant asserts that parol evidence may be received with reference to a negotiable instrument to show want of consideration, delivery for a special purpose, or delivery subject to a condition precedent. There can be no question that parol evidence may be received to show want of consideration. In this case, however, $3,600 was handed over to defendant at the time the note was executed and delivered to Paul. That fact cannot be questioned. The $3,600 was the consideration for the note, unless the $3,600 was given to defendant as a gift or donation at the time the note was delivered to Paul. If at that time, and as of that time, the $3,600 was given to defendant as a gift or donation, parol evidence would be admissible to show that fact on the ground that parol evidence may be received to show want of consideration. However, as we have already indicated, according to the testimony, the gift was not to accrue until the time of Paul's death; therefore, it was not a gift made at the time of the execution of the note. The evidence received was inadmissible to show want of consideration.

There is no testimony of the existence of a condition precedent, which, if it did exist, could be shown by parol testimony. The condition testified to here is a condition subsequent, and the testimony was inadmissible to vary the terms of the note. In order to admit parol evidence, the condition precedent must prevent any contract, not a condition subsequent which avoids or changes a contract actually made. Skelton v. Grimm, 156 Minn. 419, 195 N. W. 139; see, Security Nat. Bank v. Pulver, 131 Minn. 454, 155 N. W. 641.

If the note was delivered for the special purpose of evidencing an agreement to pay the interest only, oral evidence to show that fact is inadmissible. There is no claim or evidence of conditional delivery. Leach v. Leach, 162 Minn. 159, 202 N. W. 448.

In support of its position, the defendant cites Kragnes v. Kragnes, 125 Minn. 115, 145 N. W. 785, and Leach v. Leach, *supra.* Both cases involved an advancement to a child by a parent, and a note given by the child to the parent to evidence the amount advanced and providing for payment of interest. In the Kragnes case we said (125 Minn. 117, 145 N. W. 785):

"We have then only to inquire whether it was competent for defendant, under the allegations of his answer, to prove by parol that the money in question was a gift from his father, for the allegations of the answer sufficiently present that defense. It alleges that the money was a gift, intended as an advancement, and that there was no consideration for the note. If in fact a gift, and the note was taken as a matter of form, to then express an advancement, it follows that the note was without consideration, for in that case there could have been no intention that it should be repaid. Such being the defense the case comes within the rule permitting the maker of a promissory note to show that it was given as accommodation paper."

The answer in that case alleged that on the day of the date of the note decedent, the father, gave and advanced to defendant the amount of money for which the note was given, in anticipation of defendant's share in his father's estate. The gift was not to accrue at the time of the death of the payee, but at the time the money was given in exchange for the note. In the Leach case, there was an advancement made by plaintiff, the mother, to defendant, her son, according to the finding of the jury. Since an advancement is an irrevocable gift *in praesenti* made by a parent to a child, to enable the donee to anticipate his inheritance to the extent of the gift (18 C. J., Descent and Distribution, § 201, 26 C. J. S., Descent and Distribution, § 91), the court permitted parol evidence to be received to show the nature of the transaction. The court said the gift was irrevocable (162 Minn. 164, 202 N. W. 450) "and there is no consideration for a promise to refund the subject of a gift."

In the instant case, the gift was not made at the time of the execution of the note, but was to accrue at the time of the donor's death. Since the $3,600 involved here was not turned over to defendant as a gift or donation at the time of the execution and delivery of the note, the cases cited by defendant purporting to support its contention are inapplicable.

In our opinion, the court erred in receiving the evidence which tended to vary the terms of the note here involved, and, since the decision was based on such evidence, there must be a reversal.

Judgment reversed with directions to enter judgment for plaintiff in the principal sum due on the note, with interest and costs.