**NORTHWESTERN STATE BANK OF LUVERNE, Luverne, Minnesota, Respondent-Appellant,**

v.

**Dwight GANGESTAD, Appellant-Respondent.**

**Nos. 49377, 49404 and 49455.**

Supreme Court of Minnesota.

Oct. 19, 1979.

Vander Kooi, Hagedorn & Vander Kooi and Michael Hagedorn, Luverne, for appellant in Nos. 49377 and 49455 and for respondent in No. 49404.

Faegre & Benson, Hendrik DeJong and Thomas L. Kimer, Minneapolis, for respondent in Nos. 49377 and 49455 and for appellant in No. 49404.

Skewes, Klosterbuer & Connell and Donald R. Klosterbuer, Luverne, for respondent in Nos. 49377 and 49455 and for appellant in No. 49404.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

The plaintiff bank brought this action to enforce a number of promissory notes and installment contracts against the defendant, a farmer. The defendant raised the affirmative defenses of usury and hindrance of performance by the plaintiff and counterclaimed for fraud. Following a jury trial, the Rock County District Court granted the plaintiff's motion for a directed verdict and dismissed the counterclaim. The court subsequently held that two of the notes were usurious when made, but were enforceable because not presently usurious. The defendant appealed the judgment for the plaintiff on the issues of usury and fraud.[1] The plaintiff cross-appealed as to whether the notes were usurious when made. We affirm the trial court decisions.

The issues presented on appeal are:

I. Were the promissory notes usurious when executed?

---

1. The defendant's affirmative defense of hindrance of performance by the plaintiff was not raised on appeal.

II. Were the notes usurious at the time of enforcement? If not, are they enforceable even if usurious when executed?

III. Did the trial court err in directing verdict for the plaintiff on the defendant's counterclaim for fraud?

The defendant operated a farm of approximately 1,300 acres on which he raised cattle and grew feed crops. Between 1975 and 1977, the defendant entered into 24 promissory notes with the plaintiff, totaling approximately $275,000, to finance the purchase of cattle, seed and fertilizer and for other farm expenses. All of these notes were payable "on demand," and all bore interest at 9% per annum. A series of security agreements held the defendant's livestock, crops and farm equipment as collateral for the loans. In addition, the defendant entered into two installment sales contracts for the purchase of other farm equipment.

Towards the end of 1976, the bank began to feel insecure about its loans. It offered suggestions to the defendant for improving his farm operations and attempted to obtain refinancing for the defendant through the Farmers' Home Administration. In March 1977, when these efforts had failed, the bank made demand for payment of the notes. When payment was not made, it demanded surrender of the collateral and brought this action.

The defendant in his counterclaim for fraud, claimed the bank had represented that it would continue to finance him through 1977. The nature of the evidence with regard to this claim is one of the issues raised on appeal and therefore will be discussed below.

Prior to trial, the plaintiff replevied its collateral. However, the property was returned to the defendant after he filed a redelivery bond in replevin. The defendant claims the expenses and property damages caused by this replevin and redelivery as elements of damage under his fraud counterclaim.

The case was tried before a jury. At the close of the evidence, the plaintiff moved for a directed verdict upon its complaint and against the defendant's counterclaim. The motion was granted in whole as to the counterclaim. As to the complaint, the motion was granted in part with the exception that the issue of usury was reserved for the court's decision.[2]

Subsequently, the district court ruled that two of the notes were usurious when made. Judgment for the plaintiff upon all other notes was entered on June 27, 1978. The defendant filed a timely appeal under Rule 104.01, Minn.R.Civ.App.P., on September 22, 1978. The plaintiff filed a notice of appeal on September 29, 1978, characterized in its brief as a "Notice of Review."[3]

Following the announcement of this court's decision in *United Realty Trust v. Property Development and Research Co.*, 269 N.W.2d 737 (Minn.1978), the plaintiff moved for amended findings and conclusions. The district court then held that notes in question were not usurious at the time of enforcement and were therefore enforceable. Judgment was entered for the plaintiff for $282,205.15 plus interest, attorneys fees and costs on October 10, 1978. The defendant filed a timely notice of appeal on October 17, 1978.

Only two of the 24 promissory notes are challenged by the defendant as usurious: the November 24, 1975, note for $88,087.17 and the March 5, 1976, note for $27,769.19. It is undisputed that the subsequent promissory notes are not usurious.[4]

---

**2.** The defendant immediately appealed this action, but the appeal was dismissed on motion of the plaintiff. *Northwestern State Bank of Luverne v. Gangestad*, No. 48499 (Minn. March 21, 1978).

**3.** As a notice of review, it would be timely under Rule 106, Minn.R.Civ.App.P. However, it would not be timely as a notice of appeal of the June 27, 1978, judgment under Rule 104.01.

The difference is insignificant because the issue raised by the plaintiff's appeal does not affect the result.

**4.** Minn.Stat. § 334.011 (1976) allowed agricultural loans made after March 30, 1976, to charge interest at a rate not more than 5% above the Federal Reserve Board (FRB) discount rate for 90-day commercial paper in this Federal Reserve district. 1977 Minn. Laws, ch.

In *United Realty Trust v. Property Development and Research Co.,* 269 N.W.2d 737 (Minn.1978), we held that loans are enforceable if they are not usurious under current law even if they were usurious when executed. In light of that decision, the question of whether the two subject notes were usurious when entered into is moot.[5]

The same legislation under which the other 22 notes in this case are valid, Minn.Stat. § 334.011 (1978), also allows the enforcement of the two notes in question under the *United Realty* decision. See footnote 4, *supra.* The defendant suggests that whether the notes are valid depends on when "enforcement" is deemed to occur, due to fluctuating FRB discount rates. However, according to a stipulation of the parties, Pl.Ex. 33, the applicable FRB discount rate has not been below 4½% since 1967. Since Minn.Stat. § 334.011 (1978) allows rates up to 4½% above the FRB rate, there is no relevant time at which these 9% notes would not be enforceable under *United Realty.*

The defendant urges that *United Realty* be overruled, distinguished or limited to its facts. Overruling is urged on the ground that the holding undermines the usury statute. That argument is erroneous. Usury limits still apply although at current interest rates.

The defendant urges that *United Realty* be distinguished on the basis that Minn.Stat. § 334.011 (1978) contains "saving language" sufficient to preserve his usury defense. As the district court ruled, there is no merit to this argument. A saving clause is a specific statutory provision, not one inferred by a court from selected words of a statute. *Barnes v. Macken,* 252 Minn. 412, 90 N.W.2d 222 (1958). *See, e.g.,* Minn.

Stat. § 353.46 (1978). Minn.Stat. § 334.011 (1978) does not contain such a provision.

The defendant finally urges that *United Realty* be limited to its facts. He argues that the borrowers there were deliberately evading the usury laws and so did not deserve protection, whereas the defendant here is an unsophisticated farmer deserving of protection. *United Realty* was not based on any such distinction. Rather, it reflected the general principles that current interest rates should apply and that forfeitures should be avoided where the usury limit has been raised or abolished. These principles obviously do not leave any room for the distinction suggested.

The defendant, in a somewhat ambiguous counterclaim, alleged that the bank had fraudulently induced him to sign the January 31, 1977, security agreement with representations that it would finance him for the 1977 year. The defendant now asserts that he was fraudulently induced to sign 14 of the promissory notes being enforced in this case. Although they were all "demand notes," the defendant claims plaintiff verbally agreed that the notes would not be paid until a certain time or would only be payable out of the proceeds of certain sales.

However, the maker of a promissory note is barred from showing an agreement contrary to the terms of the note by the parol evidence rule. *Dahmes v. Industrial Credit Co.,* 261 Minn. 26, 110 N.W.2d 484 (1961); *Hogan v. Church of St. Anne of LeSueur,* 237 Minn. 52, 53 N.W.2d 449 (1952); *Fidelity State Bank v. Bradley,* 227 Minn. 541, 35 N.W.2d 748 (1949). Thus, the defendant cannot show that the demand notes were to be payable only at a certain time or after a certain event nor that the notes were only to be paid with certain funds.[6]

303, lowered the rate to 4½% above the FRB rate. The other 22 notes in this case were all executed after March 30, 1976, and are all within the interest levels allowed.

5. The question involves the application of 12 U.S.C.A. § 1831a (West Supp. 1979) and a determination of whether Minnesota responded to that statute by reasserting its usury limits.

*See generally Stephens Security Bank v. Eppivic Corp.,* 411 F.Supp. 61 (W.D.Ark.1976), *noted in* 31 Ark.L.Rev. 325 (1977).

6. Even if the defendant could prove a "course of dealing" or "usage of trade" under the Uniform Commercial Code, Minn.Stat. § 336.1–205 (1978), such proof could not contradict the ex-

The defendant could avoid the parol evidence rule by proving fraudulent inducement. *See Martin v. Guarantee Reserve Life Insurance Co.,* 279 Minn. 129, 155 N.W.2d 744 (1968). In this case, however, the district court directed a verdict for the plaintiff on the defendant's fraud counterclaim. The standard governing our review of that decision is whether the evidence and its inferences could reasonably have supported a verdict for the defendant. *Woodrow v. Tobler,* 269 N.W.2d 910, 917 (Minn. 1978). Only where the evidence unequivocally could not support such a verdict should a directed verdict be granted. *Zinnel v. Berghuis Construction Co.,* 274 N.W.2d 495 (Minn.1979); *J. N. Sullivan & Associates, Inc. v. F. D. Chapman Construction Co.,* 304 Minn. 334, 231 N.W.2d 87 (1975).

In this case, there is simply no evidence to support the defendant's claim of fraud regarding the character of the promissory notes. The evidence shows that the defendant was aware he was signing demand notes and that the bank officer did not deceive him as to their nature. The only evidence approaching a misrepresentation was the following testimony of the defendant concerning the September 16, 1976, note:

> Q. * * * What was that conversation that you had with Jim Kreuger [the bank loan officer] at that time, starting out with what did you say?
>
> A. I said that, "Jim, I notice you put the notes on demand," and Jim said, [sic] I said, "You probably some day want all your collateral," and Jim said, "Oh, no. They're all that way," and we both kind of laughed, you know, because we got along real well.

This sole evidence is, in actuality, not a misrepresentation since all the notes were demand notes. Standing alone, this evidence could not have supported a verdict of fraud. The balance of the evidence cited by the defendant only shows that the bank knew when the defendant intended to pay off the notes. It does not show any representation that the notes were not demand notes.

There is also no evidence that could have supported a verdict of fraud by representations that the bank would continue to finance the defendant for the 1977 year. If the misrepresentation claimed was that the bank would grant the defendant additional loans, such a statement of the future, rather than of present facts, cannot support a charge of fraud. *Davis v. Re-Trac Manufacturing Corp.,* 276 Minn. 116, 149 N.W.2d 37 (1967). However, a representation as to the bank's then present intent to continue to finance him, if it .did not then intend to do so, could be the basis for fraud. *Vandeputte v. Soderholm,* 298 Minn. 505, 216 N.W.2d 144 (1974); *Belisle v. Southdale Realty Co.,* 283 Minn. 537, 168 N.W.2d 361 (1969).

In this case, however, there is no evidence that the bank misrepresented its intentions to the defendant, either when he signed the notes or when he signed the January 31, 1977, security agreement. There was no testimony that the bank directly represented that it would continue to finance him through 1977. In fact, the plaintiff's evidence shows that the bank continually warned the defendant that it could not continue to finance him.

It is suggested that a misrepresentation may be inferred from the fact that the defendant signed a "renewal" security agreement on January 31, 1977. Under this procedure, done annually, the defendant's security agreement was updated as to collateral. However, the bank made no representations at that time that it would continue to finance him. The renewal agreement itself does not imply that future loans will be granted since the agreement covers all past and present debts, as well as any future ones that might be granted.

Thus, there is no evidence which could have supported a verdict of fraud as to the nature of the notes or as to the

press terms of the note. Minn.Stat. § 336.1–205(4) (1978); *Wabasso State Bank v. Caldwell*

*Packing Co.,* 308 Minn. 349, 251 N.W.2d 321 (1976).

bank's intentions regarding future financing. Under such circumstances, the directed verdict in favor of the plaintiff was proper. *J. N. Sullivan & Associates, Inc. v. F. D. Chapman Construction Co., supra.*

The trial court is affirmed.

OTIS, J., took no part in the consideration or decision of this case.