The **FIRST NATIONAL BANK OF SAINT PAUL, Plaintiff,**

v.

**INTERMOUNTAIN BANCORPORATION, INC., and James G. Edmiston, Defendants.**

No. CV 86–51–M–RES.

United States District Court,
D. Montana,
Missoula Division.

June 15, 1987.

Donald C. Robinson, Poore, Roth & Robinson, Butte, Mont., Edward Glennon, Lindquist & Vennum, Minneapolis, Minn., for plaintiff.

Moses Law Firm, Charles Moses, Billings, Mont., for defendants.

ORDER

RUSSELL E. SMITH, District Judge.

The court has diversity jurisdiction.

On January 25, 1982, Intermountain Bancorporation (Intermountain) borrowed $3,400,000 from the First National Bank of Saint Paul (Bank), and as evidence thereof, signed a promissory note due on demand with interest payable semiannually. The note among other things provided that in the event of default of any payment of interest, or if the holder deems itself insecure, the holder may declare the entire balance unconditionally due and payable. The note contained this statement: "The note shall be deemed a contract made under, and this note and the rights, obligations and duties of the parties hereto shall be governed by, the laws of the State of Minnesota." A demand for payment was made on July 31, 1985.

reading of remedial legislation as a basis for his    holding.

On January 26, 1985, James Edmiston gave to the Bank, in substitution of 5 other promissory notes, a note for $1,500,000 with a variable interest rate. The principal was payable, $75,000 on January 31, 1986, and $100,000 each January 31st thereafter until the note was fully paid. The note provided that if any indebtedness on the note was not paid when due, that the holder might declare the sum involved immediately due and payable. The note contained this statement: "This note shall be governed by the substantive laws of the State of Minnesota ..."

Defendants admit that they have failed to make the payments due under the notes previously discussed.[1] Summary judgment is therefore proper unless the affirmative defenses and counterclaims alleged are sufficient.

Defendants, by their affirmative defenses and counterclaims, allege that plaintiff failed to abide by commitments made by its loan officers, failed to disclose their intentions with respect to the promissory notes, and prematurely accelerated the balances due. Defendants allege that, by suggesting facts which were not true, suppressing true facts and making promises which they had no intention of performing, plaintiff committed actual and constructive fraud.

Defendants argue that by making demands for payment, as it did, plaintiff violated some agreement between the parties. Defendants at no time state exactly what the agreement was. In his affidavit in opposition to the motion for summary judgment, defendant Edmiston says that he had several commitments for long term financing; that short term financing would defeat the purpose of the loan; that from a long term course of dealing, he had a reasonable expectation of fair treatment, and that he was induced to sign the debt restructuring agreement upon pain of immediate foreclosure. Typical of Edmiston's deposition testimony, is this:

Q. The fact is that the bank did have the right to call the loan. It was a demand note; isn't that right?

A. That's correct.

Q. And whether to renew or to continue was a matter for periodic review by the bank; isn't that right, based on your financial information?

A. Well, along with the caveat they would work with me during hard times.

Q. Is there any writing that says they would, quote, "work with you in hard times", unquote?

A. I don't think there's any writing like that in anybody's files.

Q. I'm talking about in your file at all? Any letter to you at all from any banker anywhere from First Bank that says they would—says, quote, "they would work with you in hard times"?

A. Any letters. No.

Q. Any memos? Any writing of any kind?

A. I don't recall any writing.

Q. Any writing? Not just a letter, so we understand each other. Any kind of a writing, whether it's a scribbled note, a letter, a contract of any kind, a note, language in a note?

A. No.

Q. Anything at all?

A. Personal conversations.

Q. Pardon me?

A. Personal conversations.

Q. Nothing in writing?

A. Not that I'm aware of.[2]

. . . . .

A. It would be easy. But they said: That isn't the way we would do it because this is a demand note. But not a note providing for payments over 34 years, and it would always be renewed as long as we lived by the—that we did what we were supposed to.

Q. What were you supposed to do?

---

1. Defendants seem to admit this in their brief in response to the motion for summary judgment.

2. Edmiston Deposition of September 29, 1986, pages 98–100.

A. Well, no principal payments for two years and keep up the interest.

Q. And there's no writing of any kind to support that?

A. That's correct. None that I'm aware of.

Q. And how much—how about payments after the first two years?

A. Then they started out at $100,000 by agreement.

Q. For how long was the $100,000 to last?

A. I don't recall that.

Q. So, what you're saying is that this wasn't really a demand note? It was a note which would have no payment on principal due for two years, and following the two year period, only $100,000 on principal for an indefinite period of time; is that right?

A. Not indefinite. Obviously—

Q. Well, what was the language?

A. There wasn't any language.

Q. Well, how would you know how much was to be paid on principal after the first couple of years? How long was the $100,000 a year to last, for example? A year? Ten years? Fifteen years?

A. I think it was understood that there would be 60 percent repaid in the first 12 years.

Q. You're referring to guidelines now of the Fed?

A. Well, you have—

Q. Was there any discussion with any bank person with respect to the payments on principal of this $3,400,-000? You first said there would be no payment on the principal for two years. And who was the man that talked to you about that?

A. Well, I think it would be Lindeman.

Q. Any doubt in your mind about that?

A. No, not really.

Q. And he's the only person, right, from the bank that you had that understanding with?

A. I believe so.

Q. And then who would have been the person who told you that after the first two years there would need to be payments on the principal of $100,000 a year?

A. I believe we're still talking Lindeman.

Q. And no other persons; is that right?

A. Or whoever he reported to. But my conversations would have been with him.

Q. Well, no, now—and what did he say as to how long those $100,000 a year payments would last after the first two years?

A. I don't recall how many years.[3]

Defendants seek to expand the dealings between the parties by incorporating the doctrine of the "implied covenant of good faith," a doctrine developed by the Supreme Court of Montana. In short, defendants contend that the contracts should not be interpreted in accordance with their written terms, but in some other way.

The parties agreed that the law of Minnesota would govern.[4]

In Minnesota, the parol evidence rule excludes evidence of oral agreements in conflict with the writing. The Minnesota Supreme Court has said:

> However, the maker of a promissory note is barred from showing an agreement contrary to the terms of the note by the parol evidence rule. *Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 110 N.W.2d 484 (1961); *Hogan v. Church of St. Anne of LeSueur*, 237 Minn. 52, 53 N.W.2d 449 (1952); *Fidelity State Bank v. Bradley*, 227 Minn. 541, 35 N.W.2d 748 (1949). Thus, the defendant cannot show that the demand notes were to be payable only at a certain time or after a

---

**3.** Edmiston Deposition of December 1, 1986, pages 34–36.

**4.** Mont. Code Ann. § 30–1–105 (1985) provides: "(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."

certain event nor that the notes were only to be paid with certain funds. *Northwestern State Bank of Luverne v. Gangestad,* 289 N.W.2d 449, (Minn.1979).

For an additional reason, the affirmative defenses are not valid in Minnesota. In Montana, the breach of the implied covenant of good faith gives rise to a tort action in which damages may be assessed. But the Supreme Court of Minnesota has not been persuaded to adopt that doctrine. *See Hunt v. IBM, Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853 (Minn. 1986).

Thus, in *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975), *appeal dismissed,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), plaintiff claimed that there was a bad faith termination of a contract. The Minnesota Supreme Court said:

> We are of the opinion that when a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort.

*Id.,* 234 N.W.2d at 789.

In *Furlev Sales and Associates, Inc. v. North Am. Automotive Warehouse, Inc.,* 325 N.W.2d 20 (Minn.1982), the Minnesota Supreme Court said:

> Even a malicious or bad faith motive of a party to a contract causing a breach does not convert action into a tort action. *Wild v. Rarig,* 302 Minn. 419, 442, 234 N.W.2d 775, 790 (1975), *appeal dismissed,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). *See* W. Prosser, *The Law of Torts* § 129 (4th ed. 1971).

*See also, Space Center, Inc. v. 451 Corp.,* 298 N.W.2d 443, (Minn.1980).[5]

Rule 9(b) of the Federal Rules of Civil Procedure provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The allegations of fraud are not particularized as required by Rule 9(b) and the claims for fraud are dismissed with leave to amend.

The affirmative defenses and counterclaims other than fraud are dismissed and, as to them, plaintiff will be granted a summary judgment against defendant Intermountain Bancorporation, Inc. on the $3,400,000 note and against Defendant Edmiston on the $1,500,000 note.

If so advised, defendants are granted until July 6, 1987 within which to file an amended answer particularizing the allegations as to fraud. I call the attention of counsel to that part of Rule 11, Federal Rules of Civil Procedure, as follows:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

---

**5.** I have not touched upon the facts which would support the reasonableness of the demand for payment, because I do not deem it necessary for the purposes of this opinion.