**BORG WARNER ACCEPTANCE CORP., Petitioner, Appellant,**

v.

**SHAKOPEE SPORTS CENTER, INC., et al., Defendants,**

**John Dobson, et al., Respondents.**

No. C2–87–1707.

Supreme Court of Minnesota.

Nov. 23, 1988.

Stephen Walburg, Shakopee, for John Dobson, et al.

Brian E. Palmer, Kim Anderson, and David Hackley, Minneapolis, for Borg Warner Acceptance Corp.

SIMONETT, Justice.

We conclude, as did the trial court, that plaintiff-appellant is entitled to summary judgment enforcing a personal guaranty given it by defendants Dobson. The court of appeals' decision holding that a genuine issue of material fact precluded summary judgment is reversed.

Over a period of years, Shakopee Sports Center, Inc., financed its inventory of boats, motors, and accessories under successive floor plan inventory agreements with plaintiff Borg Warner Acceptance Corporation. As part of the financing arrangement, the shareholders of the Sports Center were required to sign personal guaranties. On April 12, 1982, defendant John Dobson, a 6–percent shareholder, together with his wife Barb, signed a personal guaranty. Similar guaranties were signed by the other two shareholders.

In January 1984 Dobson left the Sports Center and sold his stock back to the corporation. He did not, however, give written notice to Borg Warner terminating his 1982 guaranty. In September 1984, Borg Warner entered into a new floor plan financing agreement with the Sports Center for inventory to be delivered in 1985 and 1986. Prior to delivery of this inventory, the two remaining shareholders executed new personal guaranties. In June 1986, the Sports Center, unable to meet its obligations, ceased doing business. Borg Warner then commenced this suit against the Sports Center (which then filed for bankruptcy) and also against the individual guarantors, including John and Barb Dobson on their 1982 guaranty.

Borg Warner moved for summary judgment on the guaranties. The Dobsons opposed the motion as to them; the other guarantors let the motion go by default. The guaranty was, in form, absolute, unconditional, and continuing. The guarantor guaranteed payment of any indebtedness then or thereafter at any time to be incurred by the Sports Center.[1] The guaranty did not have an expiration date but it did provide that it was terminable by written notice so stating given at any time by the individual guarantor to Borg Warner.[2]

The trial court granted Borg Warner summary judgment against the Dobsons. The court noted that the Sports Center's indebtedness, which was for the 1985–86 inventory, was not contested, and it was further undisputed that the Dobsons had not terminated their 1982 guaranty prior to the 1985–86 inventory deliveries. Judgment was eventually entered against all defendants for $50,128.51 plus $6,577.50 costs and attorney fees. On appeal, the court of appeals in a split decision reversed, holding that a fact issue existed on whether Borg Warner had notice that Dobson had left the corporation at the time it obtained new personal guaranties from the remaining shareholders. *Borg Warner Acceptance Corp. v. Shakopee Sports Center, Inc.*, 418 N.W.2d 749 (Minn.App.1988). We granted Borg Warner's petition for further review.

Summary judgment may be granted if there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. The question in this case is whether there is a material fact in dispute, *i.e.,* a fact whose resolution will affect the result or outcome of the case. *Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259 (1976). This, in turn, leads us to an analysis of the substantive law on personal guaranties.

1. The guaranty signed by the Dobsons and addressed to Borg Warner stated in part:
   [T]he undersigned, jointly and severally * * *, hereby absolutely guarantees the full and prompt payment of any and every indebtedness, liability or obligation * * *, which may now or at any time and from time to time hereafter exist or be incurred by DEBTOR to you, * * *.
   * * * * * *
   We consent that you may, without in any manner affecting the undersigned's liability and upon such conditions as you deem advisable: (1) extend in whole or in part (by renewal or otherwise), modify, premature, change or release any indebtedness, liability, or obligation of DEBTOR or of any other person * * *.

2. "This Guaranty may be terminated (but only insofar as it relates to obligations of DEBTOR thereafter incurred) only upon written notice to that effect delivered by each of the undersigned to you [Borg Warner] and duly receipted for by you [Borg Warner] * * *."

Here the guaranty language is clear and unambiguous. The Dobsons do not claim otherwise. While the continuing nature of the guaranty may seem overly grasping, this is offset by the liberal termination clause in favor of the guarantor. Here, the Dobsons were free to end their obligation at any time merely by providing written notice to Borg Warner.

The Dobsons pleaded no affirmative defenses. They argue, however, that because the debt is for inventory delivered in 1985 and 1986 under subsequent financing plans, a fact issue exists whether the parties intended the 1982 guaranty to cover deliveries under these other financing plans. The guaranty, however, expressly states it covers any obligations subsequently incurred. The Dobsons also argue that their guaranty must have been intended to remain in effect only while John Dobson was a shareholder because Borg Warner took new guaranties in 1985 from the two remaining shareholders but none from them. Nothing in the guaranty, however, says that the guarantor must be a shareholder. Nor is there any basis for inferring that Borg Warner was releasing or revoking or abandoning any of the prior guaranties it had obtained. As Judge Foley points out, the guaranties taken in 1985 did not expressly release or revoke the earlier guaranties; the new guaranties were merely added precautionary security measures. *Borg Warner*, 418 N.W.2d at 753 (Foley, J., dissenting).

The court of appeals majority thought a personal guaranty of indefinite duration is to be construed as continuing for a reasonable time, and, if this is the governing substantive law, then a fact issue exists in this case as to what is a reasonable time. If a guaranty does not contain any time limitation, it is true termination after a reasonable time may be implied. *Continental Can Co. v. Lanesboro Canning Co.*, 180 Minn. 27, 230 N.W. 121 (1930); *Lehigh Coal & Iron Co. v. Scallen*, 61 Minn. 63, 63 N.W. 245 (1895). This rule, however, only applies when the contract does not specifically include a date of expiration or a termination provision. Where, as here, the guaranty contains a termi-

nation provision, the contract is not ambiguous or unclear as to duration. Because the Dobsons expressly reserved the right to terminate their guaranty at any time, the reasonable time rule does not apply. This is well-settled law. *See Midway National Bank v. Gustafson*, 282 Minn. 73, 81, 165 N.W.2d 218, 224 (1968), and *Midland National Bank v. Security Elevator Co.*, 161 Minn. 30, 41–42, 200 N.W. 851, 856 (1924). Both these cases contained termination provisions very similar to Dobsons'. In *Midway*, too, there were subsequent guaranties given by the other principals. In *Midway*, several shareholders sold their stock and the bank even acknowledged the ownership change; nevertheless, the stockholders who had withdrawn from the corporation were held to be liable on their non-terminated guaranties for obligations incurred after they had left the corporation.

The Dobsons unfortunately forgot to terminate their personal guaranty when John Dobson left the corporation, and one can see how this might happen. While one might like to excuse guarantors from the consequences of their forgetfulness, there simply is no principled basis for doing so here. *Midway* and *Midland* govern. A personal guaranty is a significant business transaction. A person signing as guarantor is agreeing to pay, if need be, the debt of another, never an agreeable task for the person signing but a prudent business precaution for the financing party. In these circumstances the law requires guarantors to abide by what they have agreed to.

Whether Borg Warner had knowledge that John Dobson was no longer a principal in the Sports Center at the time it sought new personal guaranties from the other two shareholders may be in dispute, but even so, that dispute does not involve a fact material to the enforceability of the guaranty. As the trial court concluded, there is no genuine issue here of any material fact. The case must be reversed and the judgment reinstated.

REVERSED.