**CURRIE STATE BANK, Respondent,**

v.

**Douglas SCHMITZ, Appellant.**

**No. C3–00–2152.**

Court of Appeals of Minnesota.

June 26, 2001.

Renee C. Rubish, Charles W. Ries, Maschka, Riedy & Ries, Mankato, for respondent.

William J. Wetering, Hedeen, Hughes, Wetering, & Kness, Worthington, for appellant.

Considered and decided by SCHUMACHER, P.J., ANDERSON and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge *

Appellant challenges the district court's entry of summary judgment in favor of respondent, arguing that a genuine issue of material fact existed regarding whether appellant's lack of knowledge that respondent had granted extensions of time for payment of two promissory notes, co-signed by appellant, relieved appellant from liability. Appellant also argues that the district court erred in ruling that oral evidence of when and by whom the notes were to be paid was barred by the parol evidence rule. Although there is no genuine issue of material fact regarding whether appellant's lack of knowledge that extensions had been granted relieved him from liability, we conclude that the oral agreement is not barred by the parol evidence rule and reverse and remand.

## FACTS

Appellant Douglas Schmitz is part owner of Schmitz Grain. Schreier Brothers and Robert Leonard were Schmitz's customers, whose accounts had outstanding balances owed to Schmitz Grain. In order to obtain payment on Shreier Brothers's and Leonard's accounts, Schmitz co-signed promissory notes for each party in favor of respondent Currie State Bank (the bank). Schmitz co-signed the Shreier Brothers note on April 19, 1996, and he co-signed Leonard's note on May 8, 1996. Because Schmitz co-signed the notes, Shreier Brothers and Leonard were able to obtain lower interest rates on the notes.

The Shreier Brothers note was originally due in October 1996. Because Schreier Brothers was unable to pay, the bank granted three extensions of time for pay-

ment: December 1996; August 1997; and August 1998. Schreier Brothers made interest payments, but no funds were applied to the principal balance. Melvin and Robert Schreier, on behalf of Schreier Brothers, eventually petitioned for Chapter 7 bankruptcy, and they received a discharge of their debts on November 24, 1999.

Leonard's note was originally due in December 1996. Because Leonard was unable to pay, the bank granted two extensions of time for payment: April 1997 and January 1998. Leonard made interest payments on the note, but no funds were applied to the principal balance. Leonard eventually petitioned for Chapter 7 bankruptcy, and he received a discharge from his debts on October 19, 1999.

In April 1999, the bank sent Schmitz a letter informing him that payment of Leonard's note was past due; this was the only notice Schmitz received regarding delinquency of the notes. In February 2000, the bank brought two actions against Schmitz seeking to collect payment for both notes. In August 2000, the bank moved for summary judgment.

Schmitz offered evidence of an oral agreement among himself, Schreier Brothers, and Leonard, in which each agreed that the notes would be paid by their original due dates from proceeds of livestock sales by Schreier Brothers and Leonard. Schmitz argued that the bank was aware of that oral agreement but did not apply any proceeds from the livestock sales to the notes, even though it had received enough money to satisfy both notes. Instead, the proceeds were applied to other obligations that Schreier Brothers and Leonard had with the bank.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

The district court ruled that evidence of the oral agreement was barred by the parol evidence rule because it contradicted a term of the notes. The court granted the bank's motion for summary judgment. Schmitz now appeals the summary judgment in favor of the bank.

## ISSUES

1. Did the district court err in concluding that there was no genuine issue of material fact regarding whether appellant's lack of knowledge of the extensions of time for payment relieved appellant from liability?

2. Did the district court err in ruling that evidence of an oral agreement regarding when and by whom the promissory notes were to be paid was barred by the parol evidence rule?

## ANALYSIS

On appeal from summary judgment, the reviewing court determines whether genuine issues of material fact exist and whether the district court erroneously applied the law. *Gleason v. Metropolitan Council Transit Operations*, 582 N.W.2d 216, 219 (Minn.1998). The reviewing court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). When deciding a purely legal issue, the reviewing court need not give deference to the district court's decision. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

## I. Notice of Extensions

Schmitz argues that he is the guarantor of the promissory notes and that because the bank failed to give him notice of the extensions he should be released and discharged. The bank argues that Schmitz is not a guarantor and therefore is not afforded the protection of guaranty law. Instead, the bank argues that, as a co-signer of the notes, Schmitz is primarily liable for repayment. In making this argument, the bank asserts that Schmitz is a co-maker of the notes rather than merely an accommodation party[1] on the liability of Schreier Brothers and Leonard. But the bank cites no authority or facts to support this proposition.

A guarantor of payment is "[o]ne who guarantees payment of a negotiable instrument when it is due without the holder first seeking payment from another party." Black's Law Dictionary 711 (7th ed.1999). In the present case, the promissory notes do not clearly identify the capacity in which Schmitz signed the notes. The supreme court, in deciding a similar dispute about whether parties to a note were co-makers or guarantors, looked to the terms of the agreement for resolution. *Charmoll Fashions, Inc. v. Otto*, 311 Minn. 213, 217, 248 N.W.2d 717, 719 (1976). In *Charmoll*, a section of the agreement, which was part of the promissory note, stated that "the undersigned do hereby jointly and severally guarantee the payment of the within note according to its terms and conditions." *Id.* at 215, 248 N.W.2d at 718. The agreement also provided that

the holder hereof shall not be required to proceed against the maker hereof pri-

---

**1.** "An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to" the instrument. *LeRoy v. Marquette Nat'l Bank*, 277 N.W.2d 351, 354 (1979) (quotation omitted). An accommodation party's obligation to pay is based on the capacity in which the party signed the instrument. Minn.Stat. § 336.3–419(b) (2000).

or to proceeding to collect under this guarantee, but may proceed directly against the undersigned or any of them. *Id.* The court concluded that this part of the agreement did not mean that the respondents were co-makers; rather

the purpose of such a sentence is to render the guaranty absolute as opposed to conditional in order that the holder may proceed directly against the guarantor without complying with the difficult, costly, and cumbersome common-law requirements of notice, demand, and suit against the maker, etc. which apply to conditional guaranties.

*Id.* at 218, 248 N.W.2d at 720 (citation omitted); *see also Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 33, 110 N.W.2d 484, 488–89 (1961) (stating guaranty contracts can be conditional or absolute; if absolute, then obligor becomes liable merely upon failure of debtor's performance). Based on the language of the agreement, the court in *Charmoll* concluded that the respondents agreed only to guarantee payment of the note and were therefore guarantors rather than co-makers. *Charmoll*, 311 Minn. at 221, 248 N.W.2d at 721.

Like the language construed in *Charmoll*, the language in this case is part of the promissory notes. The language of the agreement in *Charmoll* is very similar to the language in the instant case. Here, the notes provide that "the undersigned (if more than one, jointly and severally) hereby unconditionally guarantees the prompt payment of the within Note." In addition, the "notice to the cosigner" section of the note stated:

You are being asked to guarantee this debt. * * * If the borrower doesn't pay the debt, you will have to. * * * The creditor can collect this debt from you without first trying to collect from the borrower.

Based on the similarity between the language of the agreement in *Charmoll* and the language in the instant case, we conclude that Schmitz signed the notes as a guarantor rather than a co-maker. Thus, contrary to the bank's assertion, Schmitz is afforded the protection of guaranty law.

Next, we consider whether summary judgment was appropriate in light of Schmitz's argument that he should be released and discharged from the guaranty contracts because he was unaware that the bank extended the time for payment of the notes.

The general rule is that when the time of payment is extended without a guarantor's consent, the guarantor is released and discharged from the guaranty contract. *Clark v. Otto B. Ashbach & Sons, Inc.*, 241 Minn. 267, 276, 64 N.W.2d 517, 523 (1954). But, in *Clark*, the only case Schmitz cites, the guarantors were "asked to guarantee the performance of an entirely different contract from the one originally made by the principal." *Id.* at 276, 64 N.W.2d at 523. The principal obligor had negotiated with the creditor and entered into *new* contracts to which the guarantors were not parties. *Id.* Further, the language in the original contract was silent as to whether the creditor could grant an extension without providing notice to the guarantors. *Id.* at 269, 64 N.W.2d at 519. But it is clear that the court in *Clark* did not consider the new contracts to be extensions; rather, the court considered them to be entirely distinct. *Id.*

Here, the terms and conditions section of each note states that "[e]ach Borrower, endorser and guarantor * * * consents to any extensions and renewals hereof without notice." Following the terms and conditions, there is space provided for the parties' signatures, but Schmitz did not

sign this section in either note. Schmitz did, however, sign the notes in two other places. First, Schmitz's signature appears after the bolded statement that reads, "I AGREE TO THE TERMS SET OUT ON THE FRONT AND BACK OF THIS AGREEMENT." Second, Schmitz's signature appears in the "identification of debt" section after the statement that reads, "I acknowledge receipt and copy of this notice, the debtor's agreement, and any separate agreement signed by me."

Neither Schreier Brothers nor Leonard signed new promissory notes purporting to bind Schmitz as the guarantor. Instead, the bank is seeking to hold Schmitz liable for the original notes, which he specifically agreed to pay if Schreier Brothers and Leonard·defaulted. In addition, the language of the notes appears to be plainly written. Parties who sign plainly written documents must be held liable, otherwise such documents "would be entirely worthless and chaos would prevail in our business relations." *Watkins Prod., Inc. v. Butterfield*, 274 Minn. 378, 380, 144 N.W.2d 56, 58 (1966) (quotation omitted). Also, in the absence of misrepresentation, trick, or artifice, if a party has the ability to read a written contract and fails to do so, the party is still bound by it. *Larson v. Sventek*, 211 Minn. 385, 390, 1 N.W.2d 608, 611 (1941). We conclude that Schmitz cannot rely on the general rule regarding extensions and is bound by the language of the notes. Thus, there is no genuine issue of material fact as to whether Schmitz's lack of knowledge that the bank had granted extensions of time for payment of the notes relieved him of liability.

## II.  Parol Evidence

Schmitz argues that the district court erred in ruling that evidence of an oral agreement that the notes would be paid from the livestock sale proceeds was barred by the parol evidence rule. In making this argument, Schmitz seems to be implying that, because his guaranties were for an unlimited duration, there is a fact issue as to whether that duration was unreasonable. Schmitz seems to assert that, because all parties to the notes, including the bank, "understood" that the notes were to be paid in 1996 and 1997 from the livestock sale proceeds, and because Schmitz was unaware of the extensions and did not learn that the notes were unpaid until 1999, evidence of the oral agreement would help to explain a reasonable time limit for his guaranties.

The parol evidence rule provides that terms

set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

\* \* \* \*

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Minn.Stat. § 336.2–202 (2000).

Termination of a guaranty after a reasonable time may be implied if the contract does not contain any time limitation. *Borg Warner Acceptance Corp. v. Shakopee Sports Ctr., Inc.*, 431 N.W.2d 539, 541 (Minn.1988). "This rule, however, only applies when the contract does not specifically include a date of expiration or a termination provision." *Id.* Determining a reasonable time period for a guaranty contract presents a fact issue. *Id.* The guaranty should be "limited to a time which is reasonable, taking into consider-

ation not merely the language of the guaranty, but all the circumstances of the case." *Continental Can Co. v. Lanesboro Canning Co.*, 180 Minn. 27, 28–29, 230 N.W. 121, 122 (1930) (quotation omitted).

The district court did not determine what would constitute a reasonable time limit for Schmitz's guaranties, even though he argued this theory in his memorandum in opposition to the bank's summary judgment motion. Instead, the court ruled that evidence of an oral agreement was barred because the agreement was contrary to the terms of the note. In making this ruling, the district court cited *Northwestern State Bank v. Gangestad*, 289 N.W.2d 449 (Minn.1979). The court relied on *Gangestad* for the proposition that a maker of a promissory note is barred by the parol evidence rule from showing that the parties orally agreed "that the notes would not be paid until a certain time or would only be payable out of the proceeds of certain sales." *Id.* at 452.

*Gangestad* is distinguishable from the instant case for two reasons. First, Gangestad was the maker of a note, whereas Schmitz is only a guarantor. Second, and more importantly, the notes that Gangestad entered into were all payable on demand, whereas the notes in this case had specific due dates. Unlike Gangestad, whose offered evidence that the note would be paid at a certain time contradicted the payable-on-demand term of the note, Schmitz's offered evidence was meant to further explain and supplement the due dates of the notes, which is allowed by the parol evidence rule. *See* Minn.Stat. § 336.2–202 (stating parol evidence is al-

lowed to explain or supplement parties' written agreement). The oral agreement was that the notes would be paid on their original due dates because Schreier Brothers and Leonard would be acquiring the necessary money from their livestock sales. Because Schmitz's guaranties were for an unlimited duration, this evidence would help the court to define the reasonable time limit for the guaranties, based on the parties' circumstances. Therefore, a genuine issue of material fact exists as to whether Schmitz's guaranties should be enforced. Because the oral agreement explains and supplements the due dates of the notes and was not offered for the purpose of contradicting the dates, we conclude that the district court erred in ruling that this evidence was barred by the parol evidence rule.

## DECISION

Even though the guaranty language contained in the notes authorized the bank to extend the time for repayment of the notes without providing notice to Schmitz, the district court should have considered the parties' oral agreement in determining a reasonable time limit for the guaranties. Thus, the district court erred by granting summary judgment in favor of the bank.

**Reversed and remanded.**